# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ADOBE SYSTEMS INCORPORATED,**<br>Plaintiff,<br>vs.<br>**NA TECH DIRECT, INC., ET AL.,**<br>Defendants. | CASE NO. 17-cv-05226-YGR<br><br>**ORDER DENYING MOTION FOR JURISDICTIONAL DISCOVERY**<br><br>Re: Dkt. No. 45 |

Plaintiff Adobe Systems Incorporated ("Adobe") brings this action against defendants NA Tech Direct, Inc., formerly known as Tigerdirect, Inc. and Tiger Direct, Inc., ("Tiger US"); Avenue Industrial Supply Company Ltd., formerly known as NA Tech Canada.CA Inc., formerly known as Tigerdirect.CA, Inc., ("Tiger Canada"); SYX Distribution Inc. ("SYX Distribution"); SYX Services, Inc. ("SYX Services"); and Systemax, Inc. ("Systemax"). In plaintiff's complaint, plaintiff brings four causes of action against all defendants: (i) copyright infringement; (ii) infringement of registered trademarks; (iii) false designation of origin / false or misleading advertising / unfair competition; and (iv) trademark dilution. (Dkt. No. 1 ("Compl.") at ¶¶ 51-87.)

Relevant to the instant motion, the Court granted Systemax's motion to dismiss for lack of jurisdiction with leave to amend and allowed plaintiff to file a motion for jurisdictional discovery prior to filing an amended complaint. (Dkt. No. 44; Dkt. No. 48, Transcript of May 1, 2018 Hearing ("MTD Transcript") at 23-24.) Now before the Court is Adobe's motion for jurisdictional discovery. (Dkt. No. 45 ("Motion").) Systemax has filed an opposition to Adobe's motion (Dkt. No. 50)[1], and Adobe has filed a reply in support of its motion (Dkt. No. 52).

---

[1] In connection with its opposition to Adobe's motion, Systemax requests that the Court take judicial notice of an excerpt of Systemax's Form 8-K Current Report Pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934, dated November 17, 2015 and filed with the Securities and Exchange Commission ("SEC"). (Dkt. No. 51.) This document is available publicly on the SEC's website. Accordingly, the Court **GRANTS** Systemax's unopposed request to

Having carefully considered the papers and evidence submitted, and for the reasons set forth more fully below, the Court **DENIES** Adobe's motion for jurisdictional discovery.

### I. BACKGROUND

Adobe is incorporated in Delaware and has its principal place of business in San Jose, California. (Compl. ¶ 1.) Defendant Systemax is incorporated in Delaware and has its principal place of business in Port Washington, New York. (*Id.* at ¶ 6.) Defendants Tiger US, Tiger Canada, SYX Distribution, and SYX Services (collectively, "Subsidiary Defendants") are wholly-owned subsidiaries of defendant Systemax. (*Id.* at ¶¶ 7-10.) As noted, in its complaint, Adobe raised four claims against all defendants. (*Id.* at ¶ 50.) Generally, Adobe alleged that defendants offered for sale, sold, and/or distributed Adobe-Branded Software, including those subject to special licensing programs, to non-end users without plaintiff's consent or authorization. (*Id.* ¶¶ 45-50.) Adobe did not include in its complaint any allegations specific to Systemax. (*See id.*)

The Court granted Systemax's motion to dismiss with leave to amend and allowed plaintiff to file a motion for jurisdictional discovery to articulate with specificity the basis for its request. (Dkt. No. 44; MTD Transcript at 23-24.) In so ordering, the Court limited Adobe's available basis for jurisdiction to an alter ego theory of specific jurisdiction. (MTD Transcript at 4-5.) Now before the Court is said motion.

### II. LEGAL STANDARDS

A court "is vested with a broad discretion to permit or deny discovery." *Laub v. U.S. Dept. of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003) (citing *Hallett v. Morgan*, 287 F.3d 1193, 1212 (9th Cir. 2012)). Jurisdictional "[d]iscovery should be granted when . . . the jurisdictional facts are contested or more facts are needed." *Laub*, 342 F.3d at 1093 (9th Cir. 2003); *see also Butcher's Union Local No. 498 v. SDV Inv., Inc.*, 788 F.3d 535, 540 (9th Cir. 1986). A plaintiff need only establish a "colorable basis" for personal jurisdiction in order to provide a reason for the court to permit jurisdictional discovery. *See Orchid Biosciences, Inc. v. St. Louis* University, 198 F.R.D. 670, 673 (S.D. Cal. 2001); *see also Focht v. Sol Media S.A.*, 2010 WL 3155826, at *2 (N.D. Cal.

---

take judicial notice of this public record. *See Lee v. City of L.A.*, 250 F.3d 668, 688–89 (9th Cir. 2001) (noting "a court may take judicial notice of matters of public record" and documents whose "authenticity . . . is not contested" and upon which a plaintiff's complaint relies) (internal quotation marks omitted) (alterations in original); *see also* Fed. R. Evid. 201(b)(2).

2

Aug. 9, 2010) ("the fact that the Ninth Circuit has adopted a prima facie standard in deciding the merits of the jurisdiction issue indicates that a lesser showing is required in order for plaintiff to obtain jurisdictional discovery in the first place").

"Jurisdictional discovery need not be allowed, however, if the request amounts merely to a 'fishing expedition.'" *Barantsevich v. VTB Bank*, 954 F.Supp.2d 972, 996 (C.D. Cal. 2013). A court may properly deny discovery "when it is clear that further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction," *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 430 n. 24 (9th Cir. 1977), or "[w]here a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by the defendants." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1160 (9th Cir. 2006); *see also Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008) (finding denial of jurisdictional discovery is appropriate when request is "based on little more than a hunch that it might yield jurisdictionally relevant facts").

### III. DISCUSSION

As in *Barantsevich*, Adobe relies "entirely on the argument that the contacts of its subsidiaries are properly attributed to [Systemax] for jurisdictional purposes."[2] *See Barantsevich*, 954 F.Supp.3d at 997. Therefore, in order to establish a basis for jurisdictional discovery on an alter ego theory of specific jurisdiction, Adobe must make a colorable claim that (1) there is such unity of interest and ownership that the separate personalities of Systemax and the Subsidiary Defendants no longer exist and (2) failure to disregard their separate entities would result in fraud or injustice. *Ranza v. Nike*, 793 F.3d 1059, 1073 (9th Cir. 2015) (internal citation omitted).

---

[2] In its motion for jurisdictional discovery, Adobe avers that "[d]efendant, *on its own* and through the Subsidiary Companies, has infringed Plaintiff's intellectual properties by offering for sale, selling, and distributing unauthorized Adobe-Branded Software . . . ." (Motion at 2.) However, the Court notes that the citation Adobe provides in support of this statement do not support Adobe's assertion that Systemax, on its own, offered for sale, sold, or distributed anything.

Adobe also reiterates facts previously offered in support of general jurisdiction in its opposition to Systemax's motion to dismiss, including that Systemax was registered to do business in California for a period. (Motion at 8; *see* Opp. at 20.) As the Court noted during the May 1, 2018 hearing on Systemax's motion to dismiss, none of these facts are sufficient to establish general jurisdiction. (MTD Transcript at 3-4.) In granting Systemax's motion to dismiss for lack of general jurisdiction, the Court indicated that Adobe should not reiterate its arguments for general jurisdiction.

The unity prong of the alter ego test requires "a showing that the parent controls the subsidiary to such a degree as to render the latter the mere instrumentality of the former." *Stewart*, *Stewart v. Screen Gems-EMI Music, Inc.*, 81 F.Supp.3d 938, 953-54 (N.D. Cal. 2015) (quoting *AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 591 (9th Cir. 1996)). It requires such "pervasive control" that it can only be met where a parent corporation "dictates every facet of the subsidiary's business—from broad policy decisions to routine matters of day-to-day operation." *Id*. Courts consider nine factors when assessing the unity prong of the alter ego test:

> [1] the commingling of funds and other assets of the entities, [2] the holding out by one entity that it is liable for the debts of the other, [3] identical equitable ownership of the entities, [4] use of the same offices and employees, [5] use of one as a mere shell or conduit for the affairs of the other, [6] inadequate capitalization, [7] disregard of corporate formalities, [8] lack of segregation of corporate records, and [9] identical directors and officers.

*Id.* (quoting *Sandoval v. Ali*, 34 F.Supp.3d 1031, 1040 (N.D. Cal. 2014)).

In support of its argument that the actions of the Subsidiary Defendants should be attributable to Systemax, Adobe makes the following allegations:
1. Systemax has acknowledged ultimate ownership of each of the subsidiaries;
2. Systemax has further acknowledged that they have co-signed agreements on behalf of their subsidiaries and guaranteed the subsidiaries' obligations;
3. Three of the Subsidiary Defendants have "identical boards made entirely of Defendant's officers and directors";
4. Systemax and Tiger US were purportedly defrauded by two individuals who had access to and laundered money from both of the two entities; and
5. Systemax and the Subsidiary Defendants entered into an asset purchase agreement with PCM, Inc., to sell of Subsidiary Defendants' assets ("APA") that left the Subsidiary Defendants underfunded. (Motion at 8-9.) Adobe notes that as part of this agreement
    a. Systemax is identified as "an intended third party beneficiary of all rights" of the Subsidiary Defendants;
    b. Systemax agreed to indemnify PCM, Inc., jointly and severally with the Subsidiary Defendants;
    c. Systemax agreed to allow PCM, Inc., access to books and records relating to the Subsidiary Defendants;
    d. any notices under the asset sale were to be send directly to Systemax, not the Subsidiary Defendants; and
    e. the same individual signed the agreement on behalf of both Systemax and the Subsidiary Defendants. (*Id.* at 9.)
6. Systemax represented itself as a "direct marketer of brand name and private label products" in its SEC filings. (*Id.* at 2.)

4

However, Adobe has not offered sufficient evidence to suggest that Systemax exercised pervasive control over the Subsidiary Defendants.

First, Adobe has not presented any evidence even suggesting the comingling of funds between Systemax and the Subsidiary Defendants. *See Stewart*, 81 F.Supp.3d at 954 (finding that a comingling of assets has occurred where the evidence shows that related companies transfer assets among themselves for no ascertainable reason); *see also Bank of Montreal v. SK Foods, LLC*, 476 B.R. 588, 599 (N.D. Cal. 2012). The only asset transfer identified by Adobe, the asset sale to PCM, Inc., was not a transfer of assets between Systemax and any of the Subsidiary Defendants, but a transfer from one of the Subsidiary Defendants to PCM, Inc. The fact that Systemax was a party to the APA does not support an inference of comingling. The APA specifically identified Systemax as apart from the Subsidiary Defendants selling their assets. (Dkt. No. 37-7 at 2.) Systemax's formal approval of the APA is also insufficient to support a finding of micro-management in support of a unity of interest. *Doe v. Unocal Corp.*, 248 F.3d 926, 927 (9th Cir. 2001) ("[a] parent corporation may be directly involved in financing and macro-management of its subsidiaries . . . without exposing itself to a charge that each subsidiary is merely its alter ego"); *see also Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1459-60 (2d Cir. 1995) (finding no alter ego liability where parental approval required for leases, major capital expenditures , and the sale of subsidiary assets). Overseeing the sale of a subsidiary's assets qualifies as "macro"- management. Additionally, Adobe's contention that, because Gilbert and Carl Fiorentino were able to commit fraud against both Systemax and Tiger US, the two companies necessarily comingled funds is conclusory as it is unsupported by any facts or allegations. (*See* Motion at 3.)

Second, Adobe fails to show any plausible basis that Systemax may have held itself out as liable for Subsidiary Defendants' debts, or visa-versa. Adobe avers that Systemax has "further acknowledged that they have co-signed agreements on behalf of their subsidiaries and guaranteed the subsidiaries' obligations." (*Id.*) However, neither of the citations provided support that assertion.[3] (*See* Dkt. No. 15-1 ¶ 3 (asserting that Systemax does not conduct business to take other

---

[3] The Court notes that Adobe appears to use ECF pagination, which differs from the "Exhibit" notation on the bottom of the page, when referring to docket citations in its motion for jurisdictional discovery. The Court will assume such going forward and notes that where available, parties should be consistent in their references to the docket.

5

purposeful actions in California)[4]; Dkt. No. 36-7 at 33 (discussing indemnifications and limitations thereof as part of asset sale agreement with PCM, Inc.)[5].) Furthermore, guarantee of a promissory note issued by a subsidiary is a common business practice and a normal feature of the parent subsidiary relationship, and therefore does not suggest a measure of control necessary to imply alter ego jurisdiction. *See Calvert v. Huckins*, 875 F.Supp. 674, 679 (E.D. Cal. 1995).

Third, Adobe has not suggested how Systemax could have used the Subsidiary Defendants as mere shells or conduits for its own affairs. Adobe points to statements in Systemax's SEC filings for the years 2010–2015 regarding the nature and function of the company's business to suggest that Systemax held itself out as engaging in business that was actually handled by the Subsidiary Defendants. (Motion at 2.) However, each of those filings include an opening statement that "Unless otherwise indicated, all references herein to Systemax Inc. (sometimes referred to as 'Systemax,' or the 'Company,' or 'we') include its subsidiaries." (*See* Dkt. No. 36-1 at 4.) Additionally, the use of "we" or the "company" in reference to a parent company and its subsidiaries is typical and "such facts do not establish agency for purposes of jurisdiction" under California state law. *F. Hoffman-LaRoche v. Superior Court*, 130 Cal.App.4th 782, 801 (2005).

Fourth, Adobe has not suggested a disregard of corporate formalities or a lack of segregation of corporate records. Adobe points to certain aspects of the APA, (1) that Systemax agreed to allow PCM, Inc., access to books and records relating to the Subsidiary Defendants; (2) that the APA required any notices under the asset sale were to be send directly to Systemax, not the Subsidiary Defendants; and (3) that the same individual signed the agreement on behalf of both Systemax and the Subsidiary Defendants, in support of their argument jurisdictional discovery. (Motion at 9.) However, Adobe's assertions do not suggest that the books and records of Systemax and the Subsidiary Defendants were comingled. Systemax's access to those records,

---

[4] The Court notes that Adobe may have inadvertently cited to the incorrect paragraph. Paragraph 2 of Docket Number 15-1 notes that "Systemax does not, other than in extreme situations demanded by a third party vendor or landlord, guarantee . . . subsidiary obligations." (Dkt. No. 15-1 ¶ 2.)

[5] Section 10.2 of the agreement notes that Systemax and each seller "shall jointly and severally, indemnify" the Purchaser with respect to certain issues. (Dkt. No. 36-7 at 32.) However, indemnification of a third party, even if undertaken on a joint and several basis of liability, does not suggest that the parent has held itself out as liable for a subsidiary's debts.

6

as well as its receipt of the notices regarding the APA, fall within the scope of macro-management by a parent company of its subsidiaries. *See Unocal*, 248 F.3d at 927.

Although the Court noted during the May 1, 2018 hearing on Systemax's motion to dismiss that Adobe's allegation of undercapitalization of certain Subsidiary Defendants following the sale of assets to PCM, Inc., could be sufficient to establish injustice under the first prong of the alter ego test (Dkt. No. 48 at 5-6), Adobe has not referenced any colorable basis of undercapitalization. Adobe alleges that the asset sale to PCM, Inc., "amounted to $14 million paid directly to [Systemax] and left the Subsidiary [Defendants] with no measurable business operations or significant assets. (Motion at 3.) However, the statements to which Adobe points do not support that assertion. At most, these statements indicate that Systemax and the Subsidiary Defendants sold the assets corresponding to a particular business and subsequently exited that business.[6] There is no indication that the entities left following the asset sale were unable to meet debts that may reasonably be expected to arise in the normal course of business. *See Laborers Clean-Up Contract Admin. Trust Fund v. Uriate Clean-Up Service, Inc.*, 736 F.2d 516, 524 (9th Cir. 1984); *see also In re Hydroxycut Mktg. & Sales Practices Litig.*, 810 F.Supp.2d 1100, 1123 (S.D. Cal. 2011). Furthermore, Systemax's SEC 8-K filing for 2015 expressly stated that in connection with the costs of its complete exit from certain operations following the asset sale, "[t]he Company expects that the cash inflows from accounts receivable e and inventory sales as well as the proceeds from the PCM transaction will be more than sufficient to offset the cash outflows related to the exit of the NATG business. As of September 30, the Company has approximately $136 million in case $103 million of availability under its credit facility." (Dkt. No. 51-1 at ECF 4.)

Finally, although Systemax has acknowledged ultimate ownership of each of the

---

[6] *See* Dkt. No. 36-6 at 12 (noting that as of the asset sale, the "Company has completed most of the NATG wind down activities, including selling its remaining inventory, closing the two remaining TigerDirect retail stores, and closing its remaining NATG distribution center), at 27 (noting that the asset sale occurred in December 2015 for $14 million), at 53 (noting that the sale "sold the business operations and certain assets and liabilities" for approximately $14 million), at 57 (describing the details of the sale, including the purchase price of $14 million and the plan to "completely exit remaining . . . operations during early 2016"); *see also* Dkt No. 36-7 at 4 (announcing APA between Systemax and PCM, Inc. for $14 million and noting terms of the agreement, including the rights that PCM, Inc. acquired).

7

subsidiaries as well as common board of directors made up of Systemax officers and directors for three of the Subsidiary Defendants, common ownership and overlapping officers are factors categorically insufficient to pierce the corporate veil on their own.[7] *Corcoran v. CVS Health Corp.*, 169 F.Supp.3d 970, 983-84.

In light of Adobe's failure to establish a colorable basis for specific personal jurisdiction over Systemax, and having reviewed plaintiff's proposed discovery interrogatories and requests, the Court finds Adobe's request to amount to a fishing expedition based on nothing more than an hunch that it may yield some connection between Systemax and one or more of the Subsidiary Defendants. *See Barantsevich*, 954 F.Supp.2d at 996; *Boschetto*, 539 F.3d at 1020. Adobe's proposed discovery includes inquiries regarding Systemax's interactions with California as well as sweeping requests for financial statements, minutes from meetings of the board of directors, policies and procedures, and other corporate records and legal documents that relate to any of the Subsidiary Defendants. However, in its opposition to Systemax's motion to dismiss, Adobe does not allege any conduct by Subsidiary Defendants SYX Distribution and SYX Services that could form the basis of Adobe's claims and therefore serve as a basis for specific jurisdiction. (Dkt. No. 35 at 2–3.) *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) (holding that for specific jurisdiction a plaintiff must show that his or her claim arises out of defendant's forum-related activities). Adobe alleges only that Tiger US and Tiger Canada sold unauthorized Adobe-branded software to non-end users. (Dkt. No. 35 at 3.)

### IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** Adobe's motion for jurisdictional discovery. If planning to pursue a claim against Systemax, Adobe must file a first amended complaint within 14 days of this order. Otherwise the Court's dismissal as to Systemax will stand.

This Order terminates Docket Number 45.

**IT IS SO ORDERED.**

Dated: July 5, 2018

*[signature]*
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

---

[7] Adobe does not assert any facts to support a contention that Systemax and any of the Subsidiary Defendants used the same offices and employees. (*See* Motion.)

8