JOHNSON & PHAM, LLP
Christopher D. Johnson, SBN: 222698
        E-mail: cjohnson@johnsonpham.com
Christopher Q. Pham, SBN: 206697
        E-mail: cpham@johnsonpham.com
Marcus F. Chaney, SBN: 245227
        E-mail: mchaney@johnsonpham.com
Nicole Drey Huerter, SBN: 250235
        E-mail: ndrey@johnsonpham.com
6355 Topanga Canyon Boulevard, Suite 326
Woodland Hills, California 91367
Telephone:     (818) 888-7540
Facsimile:     (818) 888-7544

Attorneys for Plaintiff
ADOBE SYSTEMS INCORPORATED

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| ADOBE SYSTEMS INCORPORATED, a Delaware Corporation,<br><br>                    Plaintiff,<br><br>          v.<br><br>NA TECH DIRECT INC. f/k/a TIGERDIRECT, INC., and TIGER DIRECT, INC., a Florida Corporation; AVENUE INDUSTRIAL SUPPLY COMPANY LIMITED f/k/a NA TECH CANADA.CA INC. f/k/a TIGERDIRECT.CA, INC., an Ontario Corporation; SYX DISTRIBUTION INC., a Delaware Corporation; SYX SERVICES INC., a Delaware Corporation; and DOES 1-10, Inclusive,<br><br>                    Defendants. | Case No.:  4:17-cv-05226-YGR<br><br>**FIRST AMENDED COMPLAINT FOR DAMAGES:**<br><br>**(1) FEDERAL COPYRIGHT INFRINGEMENT [17 U.S.C. § 501(a)];**<br>**(2) FEDERAL TRADEMARK INFRINGEMENT [15 U.S.C. § 1114 / Lanham Act § 32(a)];**<br>**(3) FALSE DESIGNATION OF ORIGIN / FALSE OR MISLEADING ADVERTISING / UNFAIR COMPETITION [15 U.S.C. § 1125(a) / Lanham Act § 43(a)];**<br>**(4) TRADEMARK DILUTION [15 U.S.C. § 1125(c)]**<br>**(5) CONTRIBUTORY COPYRIGHT INFRINGEMENT; and**<br>**(6) CONTRIBUTORY TRADEMARK INFRINGEMENT**<br><br>**[DEMAND FOR JURY TRIAL]** |

1  COMES NOW, Plaintiff ADOBE SYSTEMS INCORPORATED (hereinafter "Plaintiff")

2  hereby files its First Amended Complaint ("FAC") for Damages against Defendants NA TECH

3  DIRECT INC., formerly known as TIGERDIRECT, INC., and TIGER DIRECT, INC.; AVENUE

4  INDUSTRIAL SUPPLY COMPANY LIMITED, formerly known as NA TECH CANADA.CA

5  INC., formerly known as TIGERDIRECT.CA, INC.; SYX DISTRIBUTION INC.; SYX

6  SERVICES INC.; and DOES 1-10, inclusive (collectively "Defendants").

7  **PARTIES**

8  1.       Plaintiff is now, and was at the time of the filing of this FAC and at all intervening

9  times, a corporation duly organized and existing under the laws of the State of Delaware, having

10 its principal place of business in San Jose, California.

11 2.       Plaintiff is informed and believes that Defendant NA TECH DIRECT INC.,

12 formerly known as TIGERDIRECT, INC., and TIGER DIRECT, INC. ("TIGER US"), is now,

13 and was at the time of the filing of this FAC and at all intervening times, a Florida corporation

14 with its principal place of business in Miami, Florida.

15 3.       Plaintiff is informed and believes that Defendant AVENUE INDUSTRIAL

16 SUPPLY COMPANY LIMITED, formerly known as NA TECH CANADA.CA INC., formerly

17 known as TIGERDIRECT.CA, INC. ("TIGER CANADA"), is now, and was at the time of the

18 filing of this FAC and at all intervening times, an Ontario corporation with its principal place of

19 business in Richmond Hill, Ontario, Canada.

20 4.       Plaintiff is informed and believes that Defendant SYX DISTRIBUTION INC.

21 ("SYX DISTRIBUTION") is now, and was at the time of the filing of this FAC and at all

22 intervening times, a Delaware corporation with its principal place of business in Miami, Florida.

23 5.       Plaintiff is informed and believes that Defendant SYX SERVICES INC. ("SYX

24 SERVICES") is now, and was at the time of the filing of this FAC and at all intervening times, a

25 Delaware corporation with its principal place of business in Miami, Florida.

26 6.       Plaintiff is informed and believes that Defendant TIGER US is, and was at all times

27 relevant to this FAC, a wholly-owned direct or indirect subsidiary of SYSTEMAX, INC.

28 ("SYSTEMAX").

7.     Plaintiff is informed and believes that Defendant TIGER CANADA is, and was at all times relevant to this FAC, a wholly-owned direct or indirect subsidiary of SYSTEMAX.

8.     Plaintiff is informed and believes that Defendant SYX DISTRIBUTION is, and was at all times relevant to this FAC, a wholly-owned direct or indirect subsidiary of SYSTEMAX.

9.     Plaintiff is informed and believes that Defendant SYX SERVICES is, and was at all times relevant to this FAC, a wholly-owned direct or indirect subsidiary of SYSTEMAX.

10.    The true names and capacities, whether individual, corporate, associate or otherwise, of Defendants herein named as DOES 1-10, inclusive, are unknown to Plaintiff. Plaintiff therefore sues said Defendants by such fictitious names.  When the true names and capacities of said Defendants have been ascertained, Plaintiff will amend this pleading accordingly.

11.    Plaintiff further alleges that Defendants TIGER US, TIGER CANADA, SYX DISTRIBUTION, SYX SERVICES, and DOES 1-10, inclusive, sued herein by fictitious names, are jointly, severally and concurrently liable and responsible upon the causes of action hereinafter set forth.

12.    Plaintiff is informed and believes and thereon alleges that at all times mentioned herein Defendants TIGER US, TIGER CANADA, SYX DISTRIBUTION, SYX SERVICES, and DOES 1-10, inclusive, and each of them, were the agents, servants and employees of every other Defendant and the acts of each Defendant, as alleged herein, were performed within the course and scope of that agency, service or employment.

## JURISDICTION

13.    This Court has Federal subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1338(a) and 9(b), in that the case arises out of claims for trademark infringement, false designation of origin / false or misleading advertising / unfair competition and dilution under the *Lanham Act* (15 U.S.C. § 1051 *et seq.*) and copyright infringement under 17 U.S.C. § 501(a).

14.    This Court has personal jurisdiction over Defendants since Defendants do business in the State of California and have sufficient minimum contacts with this district such that the

1    exercise of jurisdiction over Defendants by this Court does not offend traditional notions of fair
2    play and substantial justice. Among other things, Defendants advertise and sell Plaintiff's products
3    to consumers within California and also have, or during the times relevant to the Complaint had,
4    offices and/or stores located within the State of California.

5         15.    Moreover, Defendants TIGER US and SYX DISTRIBUTION, for the benefit of all
6    Defendants, specifically including but not limited to the e-commerce sales platforms located at
7    tigerdirect.com and tigerdirect.ca, each entered into a separate Adobe Partner Connection Program
8    Reseller Agreements ("APCPRA") with Plaintiff as part of Plaintiff's Adobe Partner Connection
9    Reseller Program. Through the APCPRA, the Parties contractually consented to the exclusive
10   jurisdiction of this Court by providing that "[a]ll disputes arising out of or in connection with this
11   Agreement shall be brought in the state or federal courts located in Santa Clara County,
12   California."

13        16.    This Court has supplemental jurisdiction pursuant to 28 U.S.C. §§ 1367(a) and
14   1338(a) and (b).

15        17.    Venue is proper, *inter alia*, pursuant to 28 U.S.C. §1391(b) because on information
16   and belief, a substantial part of the events or omissions giving rise to the claim occurred in this
17   judicial district and has caused damages to Plaintiff in this district.

18                              **INTRADISTRICT ASSIGNMENT**

19        18.    Pursuant to Rule 3-2(c) of the Local Rules of Practice in Civil Proceedings before
20   the United States District Court for the Northern District of California ("Civil L.R.") and the
21   Court's Assignment Plan, this is an Intellectual Property Action to be assigned on a district-wide
22   basis.  This matter has been assigned to the Oakland Division.

23                                **GENERAL ALLEGATIONS**

24                   **Plaintiff and its Famous ADOBE® Software Products**

25        19.    Plaintiff is a global leader in developing and distributing innovative computer
26   software.  Its products and services offer developers and enterprises tools for creating, managing,
27   delivering and engaging with compelling content across multiple operating systems, devices and
28   media.  The software industry is competitive, and Plaintiff undertakes great expense and risk in

- 4 -
**FIRST AMENDED COMPLAINT FOR DAMAGES – Case No. 4:17-cv-05226-YGR**

conceiving, developing, testing, manufacturing, marketing, and delivering its software products to consumers.  The infringement of intellectual property related to software undermines Plaintiff's investment and creativity, and misleads and confuses consumers.

20.     The success of Plaintiff's ADOBE®, ACROBAT®, AFTER EFFECTS®, ADOBE AUDITION®, CAPTIVATE®, CONTRIBUTE®, CREATIVE SUITE®, DIRECTOR®, DREAMWEAVER®, ENCORE®, FIREWORKS®, FLASH®, FLASH BUILDER®, FRAME MAKER®, ILLUSTRATOR®, INDESIGN®, LIGHTROOM®, PHOTOSHOP®, PRELUDE®, ADOBE PREMIERE®, and SPEEDGRADE® products and services, among others (collectively referenced and referred to herein as "Adobe-Branded Software"), is due in part to Plaintiff's marketing and promotional efforts.  These efforts include advertising and promotion through Plaintiff's websites, print and other Internet-based advertising, among other efforts.  Plaintiff has spent substantial time, money and effort in building up and developing consumer recognition, awareness and goodwill in its Adobe-Branded Software and the associated marks thereto.

21.     Adobe-Branded Software and the associated marks thereto have been prominently placed in the minds of the public.  Consumers, purchasers and members of the public have become familiar with Plaintiff's software and other products and services and have come to recognize Adobe-Branded Software and the associated marks thereto and associate them exclusively with Plaintiff.  Plaintiff has acquired a valuable reputation and goodwill among the public as a result of such association.  Indeed, Adobe-Branded Software and the associated marks thereto are famous in the United States and throughout the world and have acquired secondary meaning in the minds of consumers.

22.     While Plaintiff has gained significant common law trademark and other rights in its Adobe-Branded Software through its use, advertising and promotion, Plaintiff has also protected its valuable rights by filing for and obtaining federal trademark and copyright registrations.

23.     Plaintiff has secured registrations for its ADOBE®, ACROBAT®, AFTER EFFECTS®, ADOBE AUDITION®, CAPTIVATE®, CONTRIBUTE®, CREATIVE SUITE®, DIRECTOR®, DREAMWEAVER®, ENCORE®, FIREWORKS®, FLASH®, FLASH

BUILDER®, FRAME MAKER®, ILLUSTRATOR®, INDESIGN®, LIGHTROOM®, PHOTOSHOP®, PRELUDE®, ADOBE PREMIERE®, and SPEEDGRADE® word and design trademarks, among others, with the United States Patent and Trademark Office ("USPTO"). A non-exhaustive list of Plaintiff's trademark registrations is attached hereto as **Exhibit A** (collectively referenced and referred to herein as "Adobe's Trademarks"). Specifically, Plaintiff owns and has registered the following marks:

    (i)    "ADOBE," USPTO Reg. No. 1,475,793

    (ii)    "A ADOBE," USPTO Reg. No. 1,901,149



    (iii)    "A," USPTO Reg. No. 2,081,343



    (iv)    "A," USPTO, Reg. No. 1,852,943



    (v)    "ACROBAT," USPTO Reg. No. 1,833,219

    (vi)    "ACROBAT," USPTO Reg. No. 3,652,382



    (vii)    "AFTER EFFECTS," USPTO Reg. No. 1,970,781

    (viii)    "ADOBE AUDITION," USPTO Reg. No. 2,861,671

    (ix)    "CAPTIVATE," USPTO Reg. No. 3,184,511

(x)     "CAPTIVATE," USPTO Reg. No. 3,136,772

# CAPTIVATE

(xi)    "CONTRIBUTE," USPTO Reg. No. 3,143,377

(xii)   "CREATIVE SUITE," USPTO Reg. No. 3,111,341

# CREATIVE SUITE

(xiii)  "DIRECTOR," USPTO Reg. No. 1,600,438

# DIRECTOR

(xiv)   "DREAMWEAVER," USPTO Reg. No. 2,294,926

# DREAMWEAVER

(xv)    "ENCORE," USPTO Reg. No. 2,949,766

(xvi)   "ADOBE ENCORE," USPTO Reg. No. 2,916,709

(xvii)  "FIREWORKS," USPTO Reg. No. 2,043,911

# FIREWORKS

(xviii) "ADOBE FLASH," USPTO Reg. No. 3,949,317

(xix)   "FLASH," USPTO Reg. No. 2,855,434

(xx)    "FLASH," USPTO Reg. No. 3,942,255

# FLASH

(xxi)   "FLASH," USPTO Reg. No. 2,852,245

(xxii)  "FLASH BUILDER," USPTO Reg. No. 3,857,720

# FLASH BUILDER

(xxiii) "FRAME MAKER," USPTO Reg. No. 1,479,470

(xxiv) "ILLUSTRATOR," USPTO Reg. No. 2,060,488

(xxv) "ADOBE ILLUSTRATOR," USPTO Reg. No. 1,479,408

(xxvi) "INDESIGN," USPTO Reg. No. 2,439,079

(xxvii) "LIGHTROOM," USPTO Reg. No. 3,288,605

(xxviii) "PHOTOSHOP," USPTO Reg. No. 2,920,764

## Photoshop

(xxix) "PHOTOSHOP," USPTO Reg. No. 3,702,607

# PHOTOSHOP

(xxx) "PHOTOSHOP," USPTO Reg. No. 1,850,242

(xxxi) "ADOBE PHOTOSHOP," USPTO Reg. No. 1,651,380

(xxxii) "PRELUDE," USPTO Reg. No. 4,262,546

# PRELUDE

(xxxiii) "ADOBE PREMIERE," USPTO Reg. No. 1,769,184

(xxxiv) "SPEEDGRADE," USPTO Reg. No. 4,142,777

# SPEEDGRADE

24.     Similarly, Plaintiff's Adobe-Branded Software is copyrightable subject matter, and Plaintiff has secured copyright registrations for various versions of its software, specifically including but not limited to ADOBE ACROBAT 9 PRO FOR WINDOWS AND MACINTOSH (TX 6-861-289), ADOBE ACROBAT X PRO (TX 7-358-035), ADOBE ACROBAT XI PRO (TX 7-624-519), ADOBE ACROBAT XI STANDARD FOR WINDOWS (TX 7-624-574), ADOBE AFTER EFFECTS CS5 (TX 7-270-589), ADOBE AFTER EFFECTS CS6 (TX 7-568-717), ADOBE AUDITION CS6 (TX 7-555-185), ADOBE CAPTIVATE 8 (TX 7-921-586), ADOBE CONTRIBUTE CS5 (TX 7-270-592), ADOBE CREATIVE SUITE 5 DESIGN STANDARD (TX 7-269-720), ADOBE CREATIVE SUITE 5 MASTER COLLECTION (TX7-269-689), ADOBE

**FIRST AMENDED COMPLAINT FOR DAMAGES – Case No. 4:17-cv-05226-YGR**

CREATIVE SUITE 5 PRODUCTION PREMIUM (TX 7-269-721), ADOBE CREATIVE SUITE 6 DESIGN & WEB PREMIUM (TX 7-568-713), ADOBE CREATIVE SUITE 6 DESIGN STANDARD (TX 7-568-688), ADOBE CREATIVE SUITE 6 MASTER COLLECTION (TX 7-568-685), ADOBE CREATIVE SUITE 6 PRODUCTION PREMIUM (TX 7-568-664), ADOBE DIRECTOR 12 (TX 7-774-915), ADOBE DREAMWEAVER CS5 (TX 7-270-593), ADOBE DREAMWEAVER CS6 (TX 7-555-170), ADOBE ENCORE CS5 (TX 7-270-597), ADOBE ENCORE CS6 (TX 7-567-108), ADOBE EXTENSION MANAGER CS5 (TX 7-270-692), ADOBE FIREWORKS CS5 (TX 7-270-908), ADOBE FIREWORKS CS6 (TX 7-555-180), ADOBE FLASH BUILDER 4 (TX 7-233-609), ADOBE FLASH CATALYST (TX 7-270-583), ADOBE FLASH PROFESSIONAL CS5 (TX 7-270-587), ADOBE FLASH PROFESSIONAL CS6 (TX 7-555-175), ADOBE FRAMEMAKER 12 WINDOWS (TX 7-902-219), ADOBE GOLIVE 4.0 DYNAMIC LINK (TX 5-233-817), ADOBE ILLUSTRATOR CS5 (TX 270-588), ADOBE ILLUSTRATOR CS6 (TX 7-620-302), ADOBE INDESIGN CS5 (TX 7-268-512), ADOBE INDESIGN CS6 (TX 7-620-297), ADOBE MEDIA ENCODER CS6 (TX 7-570-115), ADOBE ONLOCATION CS5 (TX 7-268-515), ADOBE PHOTOSHOP CS5 (TX 7-268-516), ADOBE PHOTOSHOP CS5 EXTENDED (TX 7-285-454), ADOBE PHOTOSHOP CS6 (TX 7-554-295), ADOBE PHOTOSHOP CS6 EXTENDED (TX 7-554-299), ADOBE PRELUDE CS6 (TX 7-554-952), ADOBE PHOTOSHOP ELEMENTS 11 (TX 7-626-859), ADOBE PHOTOSHOP ELEMENTS 12 (TX 7-797-697), ADOBE PHOTOSHOP LIGHTROOM 3 (TX 7-290-004), ADOBE PHOTOSHOP LIGHTROOM 5 (TX 7-774-910), ADOBE PREMIERE ELEMENTS 11 (TX 7-624-715), ADOBE PREMIERE ELEMENTS 12 (TX 7-797-584), ADOBE PREMIERE PRO CS5 (TX 7-270-594), ADOBE PREMIERE PRO CS6 (TX 7-558-286), ADOBE SOUNDBOOTH CS5 (TX 7-268-517), and ADOBE SPEEDGRADE CS6 (TX 7-554-942), among others, with the United States Copyright Office.  A non-exhaustive list of Plaintiff's copyright registrations is attached hereto as **Exhibit B** (collectively referenced and referred to herein as "Plaintiff's Copyrights").

/ / /

/ / /

**Plaintiff's Licensing Restrictions**

25.     As part of its international licensing and distribution programs, Plaintiff imposes various restrictions on the distribution of all Adobe-Branded Software. Every piece of Adobe-Branded Software is licensed. Every distribution agreement entered into by Plaintiff clearly states that all Adobe-Branded Software is subject to a license, and anyone obtaining any Adobe-Branded Software is only granted a license, pursuant to Plaintiff's Software License Agreement ("SLA"). Plaintiff maintains title to the Adobe-Branded Software at all times and at no point does it transfer any ownership of title. Under the SLA, each and every piece of Adobe-Branded Software is subject to numerous restrictions on use, location of distribution, transfer, and even who is qualified to obtain the product, in certain circumstances.

26.     One specific type of licensed Adobe-Branded Software is volume-licensed software. To better serve its organizational and commercial clients that require multiple copies of the same software for multiple users, Plaintiff has developed various programs, including the Transactional Licensing Program ("TLP"), through which an organization may purchase an Adobe-Branded Software and activate it on multiple computers, simply paying an additional fee (often discounted from the full retail price) for each additional license. These licenses, however, are limited to users or machines within the same organization. These licenses are not to be sold to individuals outside of or not related to the original organization licensee.

27.     Additionally, Academic, Educational or Student-Teacher ("EDU") versions of Adobe-Branded Software are offered at a steep discount and are intended only for students or individuals associated with educational institutions. There are restrictions on the number of copies of EDU software one user can acquire, and a customer must provide certain proof of academic qualification as an EDU software user. EDU software is not intended for general, commercial distribution, and only specified resellers are allowed to distribute EDU software. EDU software may not be resold, pursuant to Plaintiff's licensing restrictions. EDU software may differ from retail products in functionality, including offering personalized tutorials and instruction and may be set to expire at the end of a student's academic term.

/ / /

**Plaintiff's Adobe Partner Connection Reseller Program**

28.     Plaintiff is aware that its customers rely on software resellers to provide them not only with products but also with dependable, reliable, and competent advice on the features, benefits, and various types of licenses of Adobe-Branded Software products and on their specific suitability to address business challenges.

29.     On June 2, 2012, Defendant TIGER US entered into an APCPRA with Plaintiff as part of Plaintiff's Adobe Partner Connection Reseller Program. This contract was for the benefit of Defendants, including sales from Defendants' websites located at www.tigerdirect.com and www.tigerdirect.ca. TIGER US was certified by Plaintiff at the Gold Level of the Adobe Partner Connection Reseller Program. TIGER US's APCPRA was renewed each year until it was abandoned on June 1, 2015.

30.     On August 26, 2014, Defendant SYX DISTRIBUTION entered into an APCPRA with Plaintiff as part of Plaintiff's Adobe Partner Connection Reseller Program. This contract was for the benefit of Defendants, including sales from Defendants' websites located at www.tigerdirect.com and www.tigerdirect.ca. SYX DISTRIBUTION was certified by Plaintiff at the lowest Registered Level of the Adobe Partner Connection Reseller Program. SYX DISTRIBUTION's APCPRA was renewed on July 27, 2015, and expired on August 26, 2016.

31.     The APCPRA provided TIGER US and SYX DISTRIBUTION with authorization, for the benefit of all Defendants, to distribute certain types of Adobe-Branded Software to only end users (consumers) according to the terms of Plaintiff's SLA, the APCPRA, and the Adobe Partner Connection Program Guide. The APCPRA specifically prohibits distribution of Adobe-Branded Software to other resellers, distributors, retailers, third party vendors, systems integrators, commission agents, or other parties who have licensed Adobe-Branded Software from Plaintiff for distribution or resale.

**Defendants' Wrongful and Infringing Conduct**

32.     Particularly in light of the success of Plaintiff and Plaintiff's products as well as the reputation they have gained, Plaintiff and its well-recognized products have become targets for unscrupulous individuals and entities who wish to take a free ride on the goodwill, reputation and

1    fame Plaintiff has spent considerable effort to build up in its products and marks and the works

2    embodied in Plaintiff's software products.

3         33.    A large number of individuals and entities deal in unauthorized and infringing

4    Adobe-Branded Software products and other products and services, including but not limited to

5    the famous ADOBE®, ACROBAT®, AFTER EFFECTS®, ADOBE AUDITION®,

6    CAPTIVATE®, CONTRIBUTE®, CREATIVE SUITE®, DIRECTOR®, DREAMWEAVER®,

7    ENCORE®, FIREWORKS®, FLASH®, FLASH BUILDER®, FRAME MAKER®,

8    ILLUSTRATOR®, INDESIGN®, LIGHTROOM®, PHOTOSHOP®, PRELUDE®, ADOBE

9    PREMIERE®, and SPEEDGRADE® products.  Their actions vary and include manufacturing,

10   copying, exporting, importing, advertising, promoting, selling, and distributing unauthorized

11   Adobe-Branded Software products.

12        34.    Plaintiff investigates and enforces against such activity and through such efforts

13   learned of Defendants and Defendants' actions advertising, importing, exporting, offering for sale,

14   selling and/or distributing unauthorized Adobe-Branded Software products within the United

15   States and Canada. Defendants own and operate various interactive Internet websites located at

16   www.tigerdirect.com and www.tigerdirect.ca (collectively the "Websites"), offering for sale

17   various software products, including unauthorized Adobe-Branded Software products.

18        35.    Plaintiff has never authorized or consented to Defendants' use of Plaintiff's

19   Trademarks, or any confusingly similar mark, or Plaintiff's Copyrights to offer for sale, sell, or

20   distribute Adobe-Branded Software to other resellers, distributors, entities, or individuals who are

21   not the end user of the software.  Despite this, Defendants offered for sale, sold, and/or distributed

22   Adobe-Branded Software to resellers and other non-end users.

23        36.    Plaintiff has never authorized or consented to Defendants' use of Plaintiff's

24   Copyrights, specifically including but not limited to the copyrighted product icons or images

25   contained in its software programs, in connection with Defendants' advertising, marketing,

26   offering for sale, sale, or distribution of Adobe-Branded Software to other resellers, distributors,

27   entities, or individuals who are not the end user of the software. Defendants, however, used

28   versions of Plaintiff's Copyrights, specifically including but not limited to copyrighted icons and

software images, in their advertising and marketing materials, specifically including but not limited to Defendants' publicly available and globally marketed Websites.

37.     Further, Plaintiff has never authorized or consented to Defendants' advertisement, offering for sale, sale, and/or distribution of TLP copies of Adobe-Branded Software outside of the licensing restrictions on TLP products. Defendants advertised, offered for sale, sold, and/or distributed TLP copies of Adobe-Branded Software outside of the licensing restrictions on TLP products. Specifically, Defendants have sold and/or distributed TLP Adobe-Branded Software to purported end users with false identities or resellers not authorized to purchase and then resell the TLP products. Defendants should have been aware that these resellers were distributing the TLP serial keys repeatedly to users unaffiliated with the original licensee, in violation of the SLA, and without paying additional licensing fees to Plaintiff.

38.     Additionally, Plaintiff has never authorized or consented to Defendants' advertisement, offering for sale, and/or distribution of EDU copies of Adobe-Branded Software outside the scope of Plaintiff's licensing restrictions on EDU products. Defendants have advertised, offered for sale, sold, and/or distributed EDU copies of Adobe-Branded Software outside the scope Plaintiff's licensing restrictions. Specifically, Defendants have sold and/or distributed EDU Adobe-Branded Software to resellers who are not authorized to purchase or resell EDU versions of Adobe-Branded Software and without seeking proof of qualification as an EDU purchaser.

39.     Previously, Plaintiff filed a separate lawsuit entitled *Adobe Systems Incorporated v. Software Tech, et al.*, Case Number 5:14-cv-02140-RMW, in the Northern District of California (referenced and referred to herein as the "Francis Litigation").

40.     The Francis Litigation was brought by Plaintiff against Defendants La Boutique du Softwaretech Inc., doing business as Software Tech and Software Tech Store, Futur-Soft Solutions Corporation, and Pierre Francis (collectively the "Francis Defendants").

41.     Among other things, the Francis Defendants were accused of selling and/or distributing TLP copies of Adobe-Branded Software to individuals who were not qualified to purchase TLP versions of Adobe-Branded Software. Moreover, the Francis Defendants were accused of selling and/or distributing the same TLP serial keys for Adobe-Branded Software to

1  multiple customers regardless of affiliation with each other or the original licensee of the Adobe-

2  Branded Software.

3        42.    The Francis Defendants were also accused of distributing EDU copies of Adobe-

4  Branded Software without a license to sell to resellers and end users who were not authorized to

5  purchase EDU copies of Adobe-Branded Software. The Francis Defendants did so without seeking

6  any proof that their customers were qualified to purchase EDU versions of Adobe-Branded

7  Software. Moreover, the Francis Defendants were accused of creating fake schools in order to

8  acquire EDU versions of Adobe-Branded Software. The Francis Defendants were never authorized

9  by Plaintiff to purchase, offer for sale, sell, or distribute EDU copies of Adobe-Branded Software.

10       43.    A preliminary injunction was entered against the Francis Defendants, which the

11  Francis Defendants repeatedly violated, resulting in the Court's Order Granting Motion for

12  Contempt and Sanctions. The Francis Litigation then culminated in a Judgment and Permanent

13  Injunction entered on September 8, 2016.

14       44.    During the course of formal discovery in the Francis Litigation, Plaintiff first

15  learned that the Francis Defendants purchased the majority of their unauthorized product from

16  Defendants. Defendants were never authorized to sell or distribute any Adobe-Branded Software

17  to other resellers such as the Francis Defendants.

18       45.    In early 2010, the Francis Defendants contacted Defendants about purchasing EDU

19  versions of Adobe-Branded Software. Defendants informed the Francis Defendants that if the

20  Francis Defendants were a school, then Defendants could provide them with EDU Adobe-Branded

21  Software.

22       46.    The Francis Defendants then created two fake schools – Vendome School and CDI

23  College – in order to purchase EDU Adobe-Branded Software from Defendants. Defendants

24  should have known that the schools identified by the Francis Defendants were not real schools and

25  that Defendants were simply supplying EDU versions of Adobe-Branded Software to the Francis

26  Defendants posing as fake schools.

27       47.    The email addresses that the Francis Defendants supplied to Defendants for the fake

28  schools were .com email addresses as opposed to .edu email addresses.

48.     The Francis Defendants used their own commercial warehouse as the address for the Vendome School. Later, the Francis Defendants switched the name on the Vendome School account to their business name, keeping the same address. Defendants should have known that the school had the same addresses as the Francis Defendants and the switch from a school to a business, and Defendants should not have continued to supply the Francis Defendants with EDU Adobe-Branded Software through the business account.

49.     From 2010 onward, the Francis Defendants purchased EDU versions of Adobe-Branded Software from Defendants. At no point in time were the Francis Defendants ever authorized EDU end users or even EDU resellers of Adobe-Branded Software. Defendants were not authorized to sell or distribute EDU Adobe-Branded Software to any resellers or non-EDU end users, such as the Francis Defendants.

50.     Defendants should have requested proof of EDU qualification from the Francis Defendants or their customers prior to selling EDU versions of Adobe-Branded Software to the Francis Defendants, which Defendants failed to do in violation of Plaintiff's licensing restrictions.

51.     On July 23, 2012, the Francis Defendants, under one of their own business names, emailed Defendants with a large order for Adobe-Branded Software. Defendants should not have fulfilled this order and should not have informed the Francis Defendants that there were still credits on the accounts they had used for their schools, which Defendants negligently applied these credits from the school accounts to the Francis Defendants' business account.

52.     Moreover, on multiple occasions, Defendants should not have billed orders from one of the Francis Defendants' businesses to one of the fake school accounts. The Francis Defendants would pay these bills from their business accounts and remind Defendants to bill the new name, not the old fake schools.

53.     All of these actions evidence that Defendants' should have known that the Francis Defendants were simply posing as each of the fake schools and were not authorized to acquire EDU Adobe-Branded Software.

54.     Additionally, the Francis Defendants purchased TLP versions of Adobe-Branded Software from Defendants. Defendants were never authorized to sell or distribute TLP versions of

**FIRST AMENDED COMPLAINT FOR DAMAGES – Case No. 4:17-cv-05226-YGR**

Adobe-Branded Software to the Francis Defendants, or any other resellers or retailers, to resell.

55.     Defendants should have been aware that the Francis Defendants were selling the serial keys of TLP versions of Adobe-Branded Software to multiple users regardless of affiliation to the original licensee and without paying any additional licensing fees to Plaintiff.

56.     Defendants should have known that the Francis Defendants would purchase TLP Adobe-Branded Software from Defendants using fake names and email addresses so that the serial key information would go to the Francis Defendants, as opposed to the customer, in order for the Francis Defendants to then distribute the serial key repeatedly to multiple, unaffiliated customers.

57.     Defendants should have known that the Francis Defendants were using fake names and email addresses for their customers in order to acquire the TLP Adobe-Branded Software for themselves.

58.     In Defendants' extensive business dealings with the Francis Defendants, Defendants should have known that the Francis Defendants would typically submit orders with fake customers who all used the same naming convention for their emails – for example, firstname.lastname514@outlook.com.

59.     On March 5, 2013, the Francis Defendants submitted an order to Defendants for Adobe-Branded Software, identifying customer information. Defendants should have known that the Francis Defendants usually used fake email addresses, should not have then informed the Francis Defendants that this email address belonged to a real customer already in Defendants' system and that the Francis Defendants should change the email address.

60.     All of these actions evidence Defendants should have known that the Francis Defendants were submitting fake names and email addresses in order to acquire TLP Adobe-Branded Software for the Francis Defendants' own use.

61.     Moreover, upon receiving the TLP serial keys for Adobe-Branded Software from Defendants, the Francis Defendants would sometimes seek an installation disc to ship to its customers. The Francis Defendants and Defendants should not have agreed to ship these installation discs to various family members of the Francis Defendants' employees in order to avoid Plaintiff's attention.

**FIRST AMENDED COMPLAINT FOR DAMAGES – Case No. 4:17-cv-05226-YGR**

62.     On information and belief, it has become apparent to Plaintiff that Defendants were engaged in an ongoing illegal concern whose primary business consists of systematically infringing and assisting others to infringe upon Plaintiff's Trademarks and Copyrights in order to generate substantial unauthorized revenues.

63.     By these sales and on information and belief, Defendants have advertised, marketed, offered for sale, sold, and/or distributed unauthorized Adobe-Branded Software products to consumers that infringe on Plaintiff's Trademarks and Copyrights, resulting in millions of dollars in ill-gotten gains from Defendants' infringement. Defendants' dealings in unauthorized software products violate Plaintiff's exclusive rights in Plaintiff's Copyrights and use images and marks that are confusingly similar and/or identical to Plaintiff's Trademarks to confuse consumers and aid in the promotion and sales of Defendants' unauthorized product.

64.     Defendants' conduct and use began long after Plaintiff's adoption and use of its ADOBE®, ACROBAT®, AFTER EFFECTS®, ADOBE AUDITION®, CAPTIVATE®, CONTRIBUTE®, CREATIVE SUITE®, DIRECTOR®, DREAMWEAVER®, ENCORE®, FIREWORKS®, FLASH®, FLASH BUILDER®, FRAME MAKER®, ILLUSTRATOR®, INDESIGN®, LIGHTROOM®, PHOTOSHOP®, PRELUDE®, ADOBE PREMIERE®, and SPEEDGRADE® word and design trademarks, after Plaintiff obtained the copyright and trademark registrations alleged above, and after Plaintiff's Trademarks became famous.  Indeed, Defendants had knowledge of Plaintiff's ownership of the Trademarks, and of the fame in such Trademarks, prior to the actions alleged herein and adopted them in bad faith and with intent to cause confusion and dilute Plaintiff's Trademarks.

65.     Defendants also should have had knowledge of Plaintiff's ownership of its Copyrights and imported, exported, advertised, marketed, offered for sale, sold, and/or distributed unauthorized copies of the Copyrights in order to illegally profit from Plaintiff's Copyrights.

66.     Defendants' actions diluted Plaintiff's Trademarks and Copyrights and caused confusion to the consuming public and the public at large as to the source, sponsorship and/or affiliation of Defendants and/or Defendants' unauthorized goods. By their wrongful conduct, Defendants have traded upon and diminished Plaintiff's goodwill.

67.     Defendants have and will continue to cause irreparable harm to Plaintiff by committing the following acts: (i) directly and contributorily infringed Plaintiff's Copyrights; (ii) directly and contributorily infringed and diluted Plaintiff's rights in Plaintiff's Trademarks; (iii) used false designations of origin on or in connection with its goods and services; and (iv) unfairly profited from such activity.  Unless enjoined, Defendants will continue to cause irreparable harm to Plaintiff.

**FIRST CAUSE OF ACTION**

**(Federal Copyright Infringement against Defendants NA TECH DIRECT INC., f/k/a TIGERDIRECT, INC., and TIGER DIRECT, INC.; AVENUE INDUSTRIAL SUPPLY COMPANY, f/k/a NA TECH CANADA.CA INC., f/k/a TIGERDIRECT.CA, INC.; SYX DISTRIBUTION INC.; SYX SERVICES INC.; and DOES 1-10, Inclusive)**

**[17 U.S.C. §501(a)]**

68.     Plaintiff repeats and re-alleges every allegation set forth in Paragraphs 1-67.

69.     Plaintiff is the exclusive owner of copyrights in the Adobe-Branded Software along with images and other protectable works related thereto and possesses copyright registrations with the United States Copyright Office relating to the same.

70.     Defendants did not seek and failed to obtain Plaintiff's consent or authorization to advertise, import, utilize, manufacture, reproduce, copy, display, prepare derivative works, distribute, sell, transfer, rent, perform, and/or market Plaintiff's copyright-protected materials outside of the limited rights granted by the SLA and APCPRA.

71.     Without permission, Defendants used Plaintiff's Copyrights, specifically including but not limited to copyrighted product icons and images from Adobe-Branded Software, in Defendants' advertising and marketing materials, specifically including but not limited to the publicly available and globally marketed Websites.

72.     Without permission, Defendants advertised, offered for sale, sold, and/or distributed Adobe-Branded Software to other resellers, distributors, entities, and individuals who are not the end user of the Software.

/ / /

73.     Without permission, Defendants advertised, offered for sale, sold, and/or distributed EDU versions of Adobe-Branded Software to non-EDU end users and without first receiving proof of eligibility to purchase EDU Adobe-Branded Software.

74.     Without permission, Defendants also advertised, offered for sale, sold, and/or distributed TLP versions of Adobe-Branded Software to other resellers, distributors, entities, and individuals who are not the end user of the software.

75.     Defendants' acts as alleged herein, constitute infringement of Plaintiff's Copyrights, including Plaintiff's exclusive rights to reproduce, distribute and/or sell such protected material.

76.     Defendants' infringement conduct as alleged herein has caused and will continue to cause substantial and irreparable harm to Plaintiff and has and will continue to cause damage to Plaintiff.  Plaintiff is therefore entitled to injunctive relief, as well as damages, Defendants' profits, increased damages, and reasonable attorney's fees and costs.

## SECOND CAUSE OF ACTION

**(Infringement of Registered Trademarks against Defendants NA TECH DIRECT INC., f/k/a TIGERDIRECT, INC., and TIGER DIRECT, INC.; AVENUE INDUSTRIAL SUPPLY COMPANY, f/k/a NA TECH CANADA.CA INC., f/k/a TIGERDIRECT.CA, INC.; SYX DISTRIBUTION INC.; SYX SERVICES INC.; and DOES 1-10, Inclusive)**

**[15 U.S.C. §1114/*Lanham Act* §32(a)]**

77.     Plaintiff repeats and re-alleges every allegation set forth in Paragraphs 1-76.

78.     Plaintiff has continuously used Plaintiff's Trademarks in interstate commerce since at least as early as 1993.

79.     Plaintiff, as the owner of all right, title and interest in and to Plaintiff's Trademarks, has standing to maintain an action for trademark infringement under the Trademark Statute, 15 U.S.C. §1114.

80.     Defendants are, and at the time of their actions complained of herein were, actually aware that Plaintiff is the registered trademark holder of Plaintiff's Trademarks.

81.     Without permission, Defendants used Plaintiff's Trademarks in connection with the advertisement, marketing, offering for sale, sale, and/or distribution of unauthorized Adobe-

Branded Software.

82. Defendants did not and failed to obtain the consent or authorization of Plaintiff as the registered owner of Plaintiff's Trademarks to deal in and commercially advertise, market, offer for sale, distribute, and/or sell Adobe-Branded Software products bearing Plaintiff's Trademarks to other resellers, distributors, entities, and individuals who are not the end user of the software.

83. Defendants used in commerce the reproductions, copies, and/or colorable imitations of Plaintiff's registered Trademarks in connection with the advertisement, sale, offering for sale, and/or distribution of Defendants' unauthorized Adobe-Branded Software bearing Plaintiff's Trademarks.

84. Defendants reproduced, copied, and colorably imitated Plaintiff's Trademarks and applied such reproductions, copies, or colorable imitations to labels, signs, prints, packages, wrappers, receptacles, and/or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution and/or advertising of goods.  Defendants thereupon imported, offered for sale, advertised, promoted, retailed, sold, and/or distributed unauthorized Adobe-Branded Software bearing Plaintiff's Trademarks.

85. Defendants' use and sale of unauthorized items bearing Plaintiff's Trademarks is likely to cause confusion or mistake, or to deceive, mislead, betray, and defraud consumers who believe that the items being offered for sale by Defendants are authorized products manufactured and distributed by Plaintiff.

86. Plaintiff has suffered and will continue to suffer substantial and irreparable injury, loss and damage to its rights in and to Plaintiff's Trademarks and the goodwill associated therewith, for which it has no adequate remedy at law.  Thus, Plaintiff requests injunctive relief.

87. Defendants' continued use of Plaintiff's Trademarks without Plaintiff's consent or authorization constitutes intentional infringement of Plaintiff's federally registered trademarks in violation of Section 32 of the *Lanham Act*, 15 U.S.C. §1114.  Based on such conduct, Plaintiff is entitled to injunctive relief as well as monetary damages and other remedies provided by sections 1116, 1117, and 1118, including Defendants' profits, treble damages, reasonable attorneys' fees, costs and prejudgment interest.

### THIRD CAUSE OF ACTION

**(False Designation of Origin / False or Misleading Advertising / Unfair Competition against Defendants NA TECH DIRECT INC., f/k/a TIGERDIRECT, INC., and TIGER DIRECT, INC.; AVENUE INDUSTRIAL SUPPLY COMPANY, f/k/a NA TECH CANADA.CA INC., f/k/a TIGERDIRECT.CA, INC.; SYX DISTRIBUTION INC.; SYX SERVICES INC.; and DOES 1-10, Inclusive)**

**[15 U.S.C. §1125(a)/*Lanham Act* §43(a)]**

88.     Plaintiff repeats and re-alleges every allegation set forth in Paragraphs 1-87.

89.     Plaintiff, as the owner of all common law right, title, and interest in and to Plaintiff's Trademarks, has standing to maintain an action for false designation of origin and unfair competition under the Federal Trademark Statute, *Lanham Act* §43(a) (15 U.S.C. §1125). Plaintiff's Trademarks are inherently distinctive and/or have acquired distinctiveness.

90.     Defendants have, outside of the limited authorization granted to them under the APCPRA and SLA, on or in connection with their goods and services, used in commerce marks that are confusingly similar to Plaintiff's Trademarks and/or have made false designations of origin which are likely to cause confusion, mistake or to deceive as to the affiliation, connection or association of Defendants with Plaintiff and/or as to the origin, sponsorship or approval of Defendants' goods or services or commercial activities.

91.     Defendants' conduct described above violates the *Lanham Act*, and Defendants have unfairly competed with and injured Plaintiff and, unless immediately restrained, will continue to injure Plaintiff, causing damage to Plaintiff in an amount to be determined at trial.  Defendants' actions are causing and will continue to cause irreparable injury to Plaintiff's goodwill and reputation associated with the value of Plaintiff's Trademarks.

92.     On information and belief, the conduct of Defendants caused confusion, mistake or deception in the market place all in blatant disregard of Plaintiff's rights.

93.     Defendants, by the exercise of reasonable care, should have known that their adoption and commencement of use in commerce and continuing use of marks that are confusingly similar to Plaintiff's Trademarks would cause confusion, mistake, or deception among purchasers,

1    users, and the public.

2         94.     Defendants' use and sale of unauthorized software bearing Plaintiff's Trademarks

3    unfairly competes with Plaintiff and is likely to cause confusion, mistake, or to deceive, mislead,

4    betray, and defraud consumers to believe that Defendants' unauthorized products are genuine,

5    authorized Adobe-Branded Software.

6         95.     Defendants' use of Plaintiff's Trademarks constitutes false designation of origin

7    and unfair competition in violation of Section 43(a) of the *Lanham Act*, 15 U.S.C. §1125(a),

8    causing Plaintiff to suffer substantial and irreparable injury for which it has no adequate remedy

9    at law.

10        96.     Defendants' wrongful conduct has permitted or will permit them to make

11   substantial sales and profits on the strength of Plaintiff's marketing, advertising, sales and

12   consumer recognition.  As a direct and proximate result of Defendants' wrongful conduct, as

13   alleged herein, Plaintiff has been and will be deprived of sales of its products in an amount as yet

14   unknown but to be determined at trial, and has been deprived and will be deprived of the value of

15   its marks as commercial assets in an amount as yet unknown but to be determined at trial.  Plaintiff

16   seeks an accounting of Defendants' profits and requests that the Court grants Plaintiff three times

17   that amount in the Court's discretion.

18        97.     Based on Defendants' wrongful conduct, Plaintiff is entitled to injunctive relief as

19   well as monetary damages and other remedies as provided by the *Lanham Act*, including

20   Defendants' profits, treble damages, reasonable attorneys' fees, costs and prejudgment interest.

21                          **FOURTH CAUSE OF ACTION**

22   **(Trademark Dilution against Defendants NA TECH DIRECT INC., f/k/a TIGERDIRECT,**

23   **INC., and TIGER DIRECT, INC.; AVENUE INDUSTRIAL SUPPLY COMPANY, f/k/a**

24   **NA TECH CANADA.CA INC., f/k/a TIGERDIRECT.CA, INC.; SYX DISTRIBUTION**

25   **INC.; SYX SERVICES INC.; and DOES 1-10, Inclusive)**

26                          **[15 U.S.C. §1125(c)]**

27        98.     Plaintiff repeats and re-alleges every allegation set forth in Paragraphs 1-97.

28   ///

99.     Plaintiff's Trademarks are distinctive and famous within the meaning of the *Lanham Act*.

100.    Upon information and belief, Defendants' unlawful actions began long after Plaintiff's Trademarks became famous, and Defendants acted knowingly, deliberately, willfully with the intent to trade on Plaintiff's reputation and to dilute or tarnish Plaintiff's Trademarks. Defendants' conduct is willful, wanton, and egregious.

101.    Defendants' sale of unauthorized software bearing Plaintiff's Trademarks is likely to cause confusion, mistake, or to deceive, mislead, betray, and defraud consumers to believe that Defendants' substandard and/or limited software are authorized, full retail versions of Adobe-Branded Software. The actions of Defendants complained of herein have diluted and will continue to dilute Plaintiff's Trademarks and are likely to impair the distinctiveness, strength and value of Plaintiff's Trademarks and injure the business reputation of Plaintiff and its marks.

102.    Defendants' acts have caused and will continue to cause Plaintiff irreparable harm. Plaintiff has no adequate remedy at law to compensate it fully for the damages that have been caused and which will continue to be caused by Defendants' unlawful acts, unless they are enjoined by this Court.

103.    As the acts alleged herein constitute a violation of section 43(c) of the *Lanham Act*, 15 U.S.C. §1125(c), Plaintiff is entitled to injunctive relief as well as monetary damages and other remedies provided by 15 U.S.C. §§1116, 1117, 1118, and 1125(c), including Defendants' profits, treble damages, reasonable attorney's fees, costs and prejudgment interest.

## FIFTH CAUSE OF ACTION

**(Contributory Copyright Infringement against Defendants NA TECH DIRECT INC., f/k/a TIGERDIRECT, INC., and TIGER DIRECT, INC.; AVENUE INDUSTRIAL SUPPLY COMPANY, f/k/a NA TECH CANADA.CA INC., f/k/a TIGERDIRECT.CA, INC.; SYX DISTRIBUTION INC.; SYX SERVICES INC.; and DOES 1-10, Inclusive)**

104.    Plaintiff repeats and re-alleges every allegation set forth in Paragraphs 1-103.

105.    Plaintiff is the exclusive owner of Plaintiff's Copyrights and possesses copyright registrations for the same with the U.S. Copyright Office.

106.    At the time of their actions, Defendants were should have been aware that Plaintiff is the registered owner of Plaintiff's Copyrights.

107.    The Francis Defendants have infringed upon Plaintiff's Copyrights by offering for sale, selling, and distributing EDU versions of Adobe-Branded Software, without permission, to customers not authorized to purchase EDU Adobe-Branded Software.

108.    The Francis Defendants have infringed upon Plaintiff's Copyrights by offering for sale, selling, and distributing TLP versions of Adobe-Branded Software repeatedly to multiple customers unaffiliated with one another and without paying additional licensing fees to Plaintiff.

109.    By selling, receiving payment for, and distributing Adobe-Branded Software to the Francis Defendants, Defendants have substantially and materially contributed to the infringement of Plaintiff's Copyrights and profited from the same.

110.    Alternatively, Defendants have induced the infringement of Plaintiff's Copyrights by soliciting sales from the Francis Defendants and receiving payment for and distributing Adobe-Branded Software to the Francis Defendants.

111.    At the time of their actions, Defendants should have been aware (or were on constructive notice) that the Francis Defendants were not authorized EDU end users nor even authorized EDU resellers. At the time of their actions, Defendants should have been aware (or were on constructive notice) that the school and/or student information that the Francis Defendants supplied as identifying their customers, in order to acquire EDU Adobe-Branded Software, was fake.

112.    At the time of their actions, Defendants should have been aware (or were on constructive notice) that the customer information supplied by the Francis Defendants for their TLP customers was fake.

113.    At the time of their actions, Defendants should have been aware (or were on constructive notice) that the Francis Defendants were using Defendants and their products to infringe Plaintiff's Copyrights.

114.    Defendants continued to offer for sale, sell, solicit, and distribute Adobe-Branded Software to the Francis Defendants after they should have known of the Francis Defendants'

1   infringing activities.

2       115.   Defendants have derived business financial gains and profits by substantially and

3   materially contributing to the Francis Defendants' direct infringement.

4       116.   As a proximate result of Defendants' actions, Plaintiff has suffered monetary

5   damage as well as irreparable harm and unquantifiable damage to its Copyrights, reputation, and

6   goodwill.

7                        **SIXTH CAUSE OF ACTION**

8   **(Contributory Trademark Infringement against Defendants NA TECH DIRECT INC.,**

9   **f/k/a TIGERDIRECT, INC., and TIGER DIRECT, INC.; AVENUE INDUSTRIAL**

10  **SUPPLY COMPANY, f/k/a NA TECH CANADA.CA INC., f/k/a TIGERDIRECT.CA,**

11  **INC.; SYX DISTRIBUTION INC.; SYX SERVICES INC.; and DOES 1-10, Inclusive)**

12      117.   Plaintiff repeats and re-alleges every allegation set forth in Paragraphs 1-116.

13      118.   Plaintiff is the exclusive owner of Plaintiff's Trademarks and possesses trademark

14  registrations for the same with the U.S.P.T.O.

15      119.   At the time of their actions, Defendants should have been aware that Plaintiff is the

16  registered owner of Plaintiff's Trademarks.

17      120.   The Francis Defendants have infringed upon Plaintiff's Trademarks by offering for

18  sale, selling, and distributing EDU versions of Adobe-Branded Software, without permission, to

19  customers not authorized to purchase EDU Adobe-Branded Software.

20      121.   The Francis Defendants have infringed upon Plaintiff's Trademarks by offering for

21  sale, selling, and distributing TLP versions of Adobe-Branded Software repeatedly to multiple

22  customers unaffiliated with one another and without paying additional licensing fees to Plaintiff.

23      122.   By selling, receiving payment for, and distributing Adobe-Branded Software to the

24  Francis Defendants, Defendants have substantially and materially contributed to the infringement

25  of Plaintiff's Trademarks and profited from the same.

26      123.   Alternatively, Defendants have induced the infringement of Plaintiff's Trademarks

27  by soliciting sales from the Francis Defendants and receiving payment for and distributing Adobe-

28  Branded Software to the Francis Defendants.

**FIRST AMENDED COMPLAINT FOR DAMAGES – Case No. 4:17-cv-05226-YGR**

124.     At the time of their actions, Defendants should have been aware (or were on constructive notice) that the Francis Defendants were not authorized EDU end users nor even authorized EDU resellers. At the time of their actions, Defendants should have been aware (or were on constructive notice) that the school and/or student information that the Francis Defendants supplied as identifying their customers, in order to acquire EDU Adobe-Branded Software, was fake.

125.     At the time of their actions, Defendants should have been aware (or were on constructive notice) that the customer information supplied by the Francis Defendants for their TLP customers was fake.

126.     At the time of their actions, Defendants should have been aware (or were on constructive notice) that the Francis Defendants were using Defendants and their products to infringe Plaintiff's Trademarks.

127.     Defendants continued to offer for sale, sell, solicit, and distribute Adobe-Branded Software to the Francis Defendants after they should have known of the Francis Defendants' infringing activities.

128.     Defendants have derived business financial gains and profits by materially contributing to the Francis Defendants' direct infringement.

129.     As a proximate result of Defendants' actions, Plaintiff has suffered monetary damage as well as irreparable harm and unquantifiable damage to its Trademarks, reputation, and goodwill.

## **PRAYER OF RELIEF**

WHEREFORE, Plaintiff ADOBE SYSTEMS INCORPORATED prays for judgment against Defendants NA TECH DIRECT INC., f/k/a TIGERDIRECT, INC., and TIGER DIRECT, INC., AVENUE INDUSTRIAL SUPPLY COMPANY, f/k/a NA TECH CANADA.CA INC., f/k/a TIGERDIRECT.CA, INC., SYX DISTRIBUTION INC., SYX SERVICES INC., and DOES 1-10, inclusive, and each of them, as follows:

A.  For an award of Defendants' profits and Plaintiff's damages in an amount to be proven at trial for copyright infringement under 17 U.S.C. §501(a);

B.  For an award of Defendants' profits and Plaintiff's damages in an amount to be proven at trial for trademark infringement under 15 U.S.C. §1114(a);

C.  For an award of Defendants' profits and Plaintiff's damages in an amount to be proven at trial for false designation of origin and unfair competition under 15 U.S.C. §1125(a);

D.  For an award of Defendants' profits and Plaintiff's damages in an amount to be proven at trial for trademark dilution under 15 U.S.C. §1125(c);

E.  For an award of Defendants' profits and Plaintiff's damages in an amount to be proven at trial for contributory copyright infringement;

F.  For an award of Defendants' profits and Plaintiff's damages in an amount to be proven at trial for contributory trademark infringement;

G.  In the alternative to actual damages and Defendants' profits for the infringement of Plaintiff's Trademarks pursuant to the *Lanham Act*, for statutory damages pursuant to 15 U.S.C. §1117(c), which election Plaintiff will make prior to the rendering of final judgment;

H.  In the alternative to actual damages and Defendants' profits for the infringement of Plaintiff's Copyrights pursuant to 17 U.S.C. §504(b), for statutory damages pursuant to 17 U.S.C. §504(c), which election Plaintiff will make prior to the rendering of final judgment;

I.  For consequential and compensatory damages;

J.  For an order from the Court requiring that Defendants provide complete accountings and for equitable relief, including that Defendants disgorge and return or pay their ill-gotten gains obtained from the illegal transactions entered into and/or pay restitution, including the amount of monies that should have been paid if Defendants complied with their legal obligations, or as equity requires;

K.  For an order from the Court that an asset freeze or constructive trust be imposed over all monies and profits in Defendants' possession which rightfully belong to Plaintiff;

L.  For destruction of the infringing articles in Defendants' possession under 15 U.S.C. §1118 and 17 U.S.C. §503;

M.  For treble damages suffered by Plaintiff as a result of the infringements engaged in by Defendants, under 15 U.S.C. §1117(b);

N.  For punitive damages suffered by Plaintiff as a result of the infringements engaged in by Defendants;

O.  For damages in an amount to be proven at trial for unjust enrichment;

P.  For Plaintiff's reasonable attorney's fees;

Q.  For all costs of suit; and

R.  For such other and further relief as the Court may deem just and equitable.

DATED: July 19, 2018                          JOHNSON & PHAM, LLP

By: /s/ Christopher Q. Pham
Christopher Q. Pham, Esq.
Attorney for Plaintiff
ADOBE SYSTEMS INCORPORATED

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DEMAND FOR JURY TRIAL

Plaintiff ADOBE SYSTEMS INCORPORATED respectfully demands a trial by jury in this action.


DATED: July 19, 2018                                        JOHNSON & PHAM, LLP


By: /s/ Christopher Q. Pham
Christopher Q. Pham, Esq.
Attorney for Plaintiff
ADOBE SYSTEMS INCORPORATED

**FIRST AMENDED COMPLAINT FOR DAMAGES – Case No. 4:17-cv-05226-YGR**