# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ADOBE SYSTEMS INCORPORATED,**<br>Plaintiff,<br>vs.<br>**NA TECH DIRECT INC., ET AL.,**<br>Defendants. | CASE NO. 17-cv-05226-YGR<br><br>**ORDER GRANTING IN PART PLAINTIFFS' MOTION AND DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br>Re: Dkt. Nos. 86, 88, 89, 95 |

Plaintiff Adobe Systems Incorporation ("Adobe") brings this action for copyright and trademark infringement against defendants NA Tech Direct Inc., formerly known as TigerDirect, Inc., and Tiger Direct, Inc. ("Tiger Direct"); Avenue Industrial Supply Company Limited, formerly known as NA Tech Canada.CA Inc., formerly known as TigerDirect.CA, Inc. ("Tiger Direct CA"); SYX Distribution Inc., and SYX Services Inc. (collectively, "Defendants"). Defendants are former licensees of Adobe's software that Adobe alleges exceeded the scope of their licenses. Adobe brings six causes of action: (i) copyright infringement, (ii) trademark infringement, (iii) Lanham Act violations, (iv) trademark dilution, (v) contributory copyright infringement, and (vi) contributory trademark infringement.[1]

Now before the Court are the parties' cross-motions for summary judgment.[2] Adobe seeks summary judgment for its direct copyright infringement, contributory copyright infringement, and contributory trademark infringement claims. Defendants oppose Adobe's motion and cross-move for summary judgment on the knowledge element of contributory infringement. Defendants also seek summary judgment on their statute of limitations, latches, and collateral estoppel defenses.

---

[1] *See* First Amended Complaint, Dkt. No. 55 ("FAC") ¶ 67. Defendants are subsidiaries of the parent corporation, Systemax Inc., which was originally named in the complaint. Adobe amended its complaint to exclude Systemax Inc., following a motion to dismiss.

[2] Dkt. No. 89 ("Adobe MSJ"); Dkt. No. 95 ("Def. Cross-MSJ"). Upon showing of good cause, Adobe's administrative motion to file exhibits under seal (Dkt. No. 86) is **GRANTED**.

Finally, Defendants seek summary judgment for trademark dilution and unfair competition, arguing that Adobe has "failed to state a claim" for those causes of action. Having considered the papers, as well as arguments by counsel on October 8, 2019, the Court **GRANTS IN PART** and **DENIES IN PART** Adobe's motion for summary judgment and **DENIES** Defendants' motions for the same.

## I. BACKGROUND

Except where evidence is noted, the following facts are taken from the statements of undisputed facts.[3] Adobe sells software programs protected by registered copyrights and trademarks. Starting in 2009, Adobe entered into agreements with the Defendants that authorized them to serve as resellers of Adobe's software subject to a restricted license. Each defendant is an affiliated subsidiary of the others under the parent company Systemax Inc. The agreements were renewed with substantially the same licensing restrictions every year until the "TigerDirect" brand was sold to PCM, Inc. in 2015.[4]

As relevant to this motion, Adobe's agreements included four licensing restrictions. First, the agreements restricted sales to end-users only. The agreements expressly prohibited sales to "resellers." Second, the license agreements restricted purchases of Adobe's software to authorized distributors. Third, the license agreements imposed restrictions on resale of Academic, Educational, or Student-Teacher ("EDU") versions of Adobe Software.[5] Defendants could only sell one copy per year of EDU software to qualified educational end users or entities after obtaining verification of educational status (e.g., a student ID). Further sales of EDU software to resellers were expressly prohibited.[6]

---

[3] The statements of undisputed facts include the Joint Statement of Undisputed Fact (Dkt. No. 87 ("JSUF")) and the Separate Statement of Uncontroverted Facts. (Dkt. No. 96-7 ("SSUF")). Unless otherwise noted, the references to the material fact include the supporting evidence. The other disputed factual references are described from the perspective of the proponent.

[4] JSUF Nos. 1-6, 11-12; SSUF No.1.

[5] Adobe sells EDU software with more limited features than its regular software for a lower price to attract new users among students. (Dkt. No. 96-1 ("Suppl. Draper Decl.") ¶ 4.)

[6] SSUF Nos. 13-18.

Fourth, Adobe imposed special restrictions on volume licensed software. Under the Transactional Licensing Program, an organization (such as a company) could purchase Adobe software and activate it on multiple computers, paying a smaller additional fee for each license. Volume licensed software could only be distributed within a single organization and sales outside of that organization were prohibited. Adobe used serial keys to track and control distribution of volume licensed software.[7]

In August 2013, Adobe began investigating a set of companies operated by Canadian resident Pierre Francis (collectively, "Software Tech") for violations of the resale license restrictions. Adobe's chief investigator, Michael Draper, purchased serial keys from Software Tech, which he determined to be sold in violation of Adobe's volume license. Adobe's database showed that the serial keys had been originally assigned to the Defendants.[8] However, the database showed that the Defendants sold the keys to apparently legitimate customers and did not show sales to Software Tech. (Dkt. No. 89-15 ("Draper Decl.") ¶ 18; Dkt. No. 89-1 ("Pham Decl.") ¶ 9 & Ex. 19 ("Draper Depo.") at 29:20-31:7.) Adobe sued Software Tech in the Northern District of California on May 9, 2014.[9]

Around the same time, in August 2014 Tiger Direct CA's "Adobe Product Champion," Jacqui Stilson, began an internal investigation into the company's sales to resellers. Ms. Stilson ran a report and noticed a number of sales to known resellers, including Software Tech, as well as improper sales of EDU and volume licensed software. Ms. Stilson reached out to her manager,

---

[7] SSUF Nos. 19, 75, 81-82.

[8] SSUF Nos. 30, 77-78; JSUF Nos. 16-27.

[9] JSUF Nos. 28-29. Adobe requests judicial notice of the Software Tech litigation to establish that Defendants improperly sold licensed Adobe software to Software Tech. (SSUF No. 24; Dkt. No. 88 ("RJN").) The Court **GRANTS** judicial notice as to the fact of those proceedings, but **DENIES** as to the truth of the factual allegations at issue in that case. *See Wyatt v. Terhune*, 315 F.3d 1108, 1114 (9th Cir. 2003) ("[T]aking judicial notice of findings of fact from another case exceeds the limits of Rule 201."), *overruled on other grounds by Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (en banc); *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001) (explaining that "when a court takes judicial notice of another court's opinion, it may do so 'not for the truth of the facts recited therein, but for the existence of the opinion'"); *M/C Am. Queen v. San Diego Marine Const. Corp.*, 708 F.2d 1483, 1491 (9th Cir. 1983) ("[A] court may not take judicial notice of proceedings or records in another case so as to supply, without formal introduction of evidence, facts essential to support a contention a cause before it.").

3

Stuart McCowan, as well as the General Manager at Tiger Direct CA, Anthony Clark, about the unauthorized sales. In so doing, Ms. Stilson identified Kan An Qin, Software Tech's sales person at Tiger Direct CA, as responsible for unauthorized volume license sales. In the following months, Ms. Stilson emailed Mr. Clark, Mr. McCowan, and Mr. Qin informing them that Software Tech was a reseller not authorized to receive Adobe software. Ms. Stilson's email was forwarded to Adam Shaffer, the Executive Vice President of Merchandise and Marketing for all Defendants.[10] (*See* Dkt. No. 94-2 ("Sarney Decl.") ¶ 11 & Ex. 10 ("Shaffer Email").)

On October 16, 2014, Ms. Stilson informed Justin Ward, a senior account manager at Adobe, about the unauthorized sales. Mr. Ward responded by forwarding a highlighted Adobe license agreement and stating that the unauthorized sales must stop. Mr. McCowan also emailed Mr. Shaffer indicating that he talked to Mr. Ward and that if he could not "assure him that these grey-market sales in Canada will stop (completely), then he's going to simply hand this over to Adobe's legal team." Mr. Ward's supervisor, Ryan Dyck, then talked to Mr. Shaffer, but did not raise the unauthorized sales with Adobe's legal department. Adobe did not add the Defendants to the Software Tech litigation. Mr. Clark nevertheless emailed several sales persons, including Mr. Qin, telling them to stop unauthorized sales.[11]

During discovery in early 2015, Adobe learned that Software Tech purchased most of its Adobe software from the Defendants using fake customer information. (Draper Decl. ¶ 19.) Software Tech would create fake customer names and contact information, as well as fake schools, to purchase EDU and volume licensed software from the Defendants.[12] In 2017, Software Tech's

---

[10] SSUF Nos. 53-60, 88, 92. Defendants dispute Adobe's characterizations on the basis that Defendants are not identified and that Adobe identified unauthorized resellers, rather than Ms. Stilson. Defendants also argue that Ms. Stilson's testimony is not admissible under Federal Rules of Evidence 602 and 802. Ms. Stilson's declaration supports Adobe's characterization of the facts. (*See* Dkt. No. 89-28 ("Stilson Decl.") ¶¶ 9-11, 15.) Ms. Stilson's testimony is admissible to show Tiger Direct CA's knowledge of unauthorized sales, as well as knowledge by the other Defendants through Mr. Shaffer, who acted as Vice President for all Defendants. (Pham Decl. ¶ 5 & Ex. 15 ("Perrin Depo.") at 110:4-16.)

[11] SSUF Nos. 61, 91-96.

[12] SSUF Nos. 33-34.

4

former sales manager, Haik Moushaghayan, began cooperating with Adobe and told them that Defendants knew about Software Tech's resale scheme. (Draper Decl. ¶ 21.) Shortly after, Adobe filed the instant lawsuit. (*Id*.) Software Tech defaulted in its case, and a default judgment was entered in September 2016.[13]

## II. LEGAL STANDARD

Summary judgment is appropriate if "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Factual disputes are only "genuine" if the evidence could cause a reasonable jury to reach a verdict for the other party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The movant can meet its burden by "showing . . . there is an absence of evidence to support the nonmoving party's case." *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000) (citation and quotation omitted). Once the movant meets its burden of showing the absence of genuine issues of material fact that burden shifts to the nonmoving party, who must demonstrate the existence of a material issue of fact. *Mahdavi v. C.I.A.*, 898 F.2d 156 (9th Cir. 1990) (citations omitted).

A party opposing summary judgment must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Turner v. Brown*, 961 F.2d 217 (9th Cir. 1992) (citations omitted). The opposition party "cannot rest on the allegations in his pleadings to overcome a motion for summary judgment." *Id.* Defendants "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Inudus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

## III. ANALYSIS

### A. Direct Copyright Infringement

Adobe moves for summary judgment for direct copyright infringement based on Defendants' alleged violations of their license agreements with Adobe. Defendants argue that their affirmative defenses of waiver, estoppel, and acquiescence, as well as statute of limitations,

---
[13] JSUF No. 30; RJN Ex. 8.

preclude summary judgment. The Court will first analyze Adobe's evidence of direct copyright infringement and then consider Defendants' affirmative defenses of waiver, estoppel, or acquiescence. The Court will consider the defense of statute of limitations in the next section.

1. *Adobe's Evidence of Direct Copyright Infringement*

A claim for copyright infringement requires the plaintiff to show that "(1) it owns valid copyrights in the works at issue, and (2) defendant encroached upon plaintiff's exclusive rights under the Copyright Act." *Microsoft Corp. v. EEE Business Inc.*, 555 F. Supp. 2d 1051, 1055 (N.D. Cal. 2008). Although transfer of a copy ordinarily terminates the copyright holder's rights, a licensing agreement has no such effect. *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1087 (9th Cir. 1989). Accordingly, a licensor may sue a licensee for copyright infringement if the licensee exceeds the scope of the license with respect to a right protected by the Copyright Act, such as the right to distribution. *MDY Indus., LLC v. Blizzard Ent't, Inc.*, 629 F.3d 928, 940 (9th Cir. 2010).

Adobe indisputably owns the registered copyrights for the software programs at issue. Adobe has produced certificates of copyright registrations to establish a presumption that the copyrights are valid. (RJN Ex. 1.)[14] Adobe indisputably licensed the copyrighted works to the Defendants subject to multiple restrictions. Adobe also produced admissible evidence to show violations of these restrictions.[15] However, in order to be entitled to summary judgment, Adobe

---

[14] Defendants dispute Adobe's motion for judicial notice on the ground that 17 of the 73 copyright registrations are not submitted as evidence, and that seven of those were registered after the allegedly infringing conduct ceased. (SSUF No. 1.) Adobe responds that the inclusion of the additional copyright registrations was inadvertent and limits its motions to the properly submitted copyright registrations. (Dkt. 97 ("RJN Reply") at 2.) Hence, the Court **GRANTS** Adobe's motion for judicial notice with respect to the 56 copyright registrations included in the motion.

[15] Adobe produced the following admissible evidence to show unauthorized conduct:

(1) Yinpeng Huang, the Chief Executive Officer of Global PC Direct, a reseller, submitted a declaration and invoices showing that his company purchased 3,000 copies of Adobe's software from Tiger Direct in 2013. (Dkt No. 89-25 ("Huang Decl."));

(2) The Blue Source Group, Inc. produced invoices showing that SYX Distribution Inc. purchased two Adobe products from them in 2012 (Pham Decl. ¶ 4 & Ex. 14.) Mr. Draper attests that Blue Source Group, Inc. is not an authorized distributor. (Draper Decl. ¶ 16);

(3) James C. Allen, the owner of SunPumps, Inc.—a non-educational company— submitted a declaration and invoices showing that his office purchased a copy of

6

was obligated to attribute specific conduct to each Defendant. *See Adobe Sys. Inc. v. Blue Source Group, Inc.*, 125 F. Supp. 3d 945, 964 (N.D. Cal. 2015); *Sun Microsystems Inc. v. Hynix Semiconductor Inc.*, 608 F. Supp. 2d 1166, 1194 (N.D. Cal. 2009). Nevertheless, Adobe moved for summary judgment for all Defendants based on conduct linked to only two of the Defendants, namely unauthorized sales to Tiger Direct and unauthorized purchases by SYX Distribution Inc.[16] Further, each unauthorized sale constitutes a separate act of copyright infringement. *See Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 671 (2014). The Court therefore cannot conclude that Defendants are liable for all unauthorized sales where Adobe failed to provide sufficiently definite evidence.[17]

---

Adobe EDU software from Tiger Direct without providing qualifications in 2015.[15] (Dkt. No. 89-22 ("Allen Decl."); *see also* Draper Decl. ¶ 14);

(4) Joshua Del, an employee of DesignLight LLC—a non-educational company—submitted a declaration and invoices showing that his office purchased a copy of Adobe EDU software from Tiger Direct without providing requisite qualifications in June 2014. (Dkt. No. 89-22 ("Allen Decl."));

(5) Kevin Gaskell, an employee of Reddick Moss, PLLC—a non-educational law firm—submitted a declaration stating that his office purchased a copy of Adobe EDU software from Tiger Direct without providing requisite qualifications in 2010.[15] (Dkt. No. 89-24 ("Gaskell Decl."); *see also* Draper Decl. ¶ 13);

(6) Shawn Brewer, an employee of J&B Medical Supply Co.—a non-educational company—submitted a declaration and invoices showing that his office purchased five copies of Adobe EDU software from Tiger Direct without providing requisite qualifications in 2015.[15] (Dkt. No. 89-27 ("Brewer Decl."); *see also* Draper Decl. ¶ 15.)

[16] Adobe also attempts to rely on evidence for which it failed to establish admissibility. For the reasons stated in Defendants' cross-motion, the Court does not consider the declaration of Mr. Moushaghayan, the testimony of Ms. Stilson or Richard Townsend, or the evidence from the Software Tech litigation to determine unauthorized sales by Defendants.

[17] Adobe asks the Court to consider various spreadsheets of Defendants' Adobe sales, but plainly fails to link that evidence to any particular copyright, specific Defendant, or even explanation of why those sales were unauthorized. (*See* Pham Decl. ¶ 21 & Exs. 21, 22.) Adobe cites Ms. Stilson's testimony for the second spreadsheet, but Ms. Stilson only identified a few of the sales as unauthorized and does not link them to any Defendant. (*See* Pham Decl. ¶ 10 & Ex. 20 ("Stilson Depo.") at 89:7-102:5.) Adobe also relies on Mr. Draper's spreadsheet showing sales to various Software Tech entities. (Draper Decl. ¶ 24 & Ex. 29.) Although this is a closer call, Mr. Draper fails to link the sales to any Defendant and does not establish that every Software Tech entity was a reseller. Accordingly, the Court cannot find liability for the sales in Mr. Draper's spreadsheet.

1 Accordingly, the Court finds that Adobe has met its initial burden to show direct copyright infringement only for those sales for which it produced concrete evidence linked to a specific Defendant, namely those set forth in footnote 7, subject to the analysis regarding the statute of limitations defense in Section II.D.1 below. Adobe has not met its burden as to its remaining direct copyright infringement claims.

### 2. *Defendants' Waiver, Acquiescence, and Estoppel Defenses*

Defendants do not dispute Adobe's evidence, but argue that their affirmative defenses of waiver, acquiescence, and estoppel preclude summary judgment.[18] Waiver occurs "if there is an intent by the copyright proprietor to surrender rights in his work," as "manifested by an overt act indicative of a right-holder's intent to completely abandon those rights." *Taylor Holland LLC v. MVMT Watches, Inc.*, 2:15-cv-03578-CVW-JC, 2016 U.S. Dist. LEXIS 187379, at **16-17 (C.D. Cal. Aug. 11, 2016) (citations omitted). Acquiescence "limits a party's right to bring suit following an *affirmative* act by word or deed by the party that conveys implied consent to another." *Seller Agency Council, Inc. v. Kennedy Ctr. For Real Estate Educ., Inc.*, 621 F.3d 981, 988 (9th Cir. 2010) (emphasis in original). Acquiescence requires that "the senior user actively represented that it would not assert a right or a claim." *Id*. at 989. Estoppel occurs if: "(1) the plaintiff knew of the defendant's allegedly infringing conduct; (2) the plaintiff intended that the defendant rely upon his conduct or act so that the defendant has a right to believe it is so intended; (3) the defendant is ignorant of the true facts; and (4) the defendant detrimentally relied upon the plaintiff's conduct." *Bangkok Broad. & T.V. Co. v. IPTV Corp.*, 742 F. Supp. 2d 1101, 1115 (C. D. Cal. 2010) (citation omitted). Equitable estoppel "is disfavored and should only be applied as needed to avoid injustice." *Id*. (citation omitted).

Defendants argue that Adobe waived, acquiesced, or became estopped from asserting its claims because it failed to sue Defendants upon discovering the unauthorized sales thus: Ms.

---

[18] The Court notes that with respect to the sales at issue, five (5) sales to SunPumps, Inc. and one (1) sale to J&B Medical Supply Co. occurred after September 2014, while the remaining sales and purchases occurred before that time and are subject to the statute of limitation analysis. Thus, while Defendants assert their affirmative defenses as to all claims, the statute of limitations defense does not apply to these six sales.

8

Stilson informed Mr. Ward at Adobe of Defendants' unauthorized sales in October 2014, and Mr. Ward instructed her to stop those violations of the licensing agreement. Mr. Dyck at Adobe then threatened to refer the matter to Adobe's legal team, but never did so, and Adobe did not join the Defendants to the ongoing Software Tech litigation. Mr. Craig, the Executive Vice President for Business to Business at Tiger Direct, nonetheless emailed several Tiger Direct sales persons telling them to stop unauthorized sales.

On this record, Adobe's failure to act does not create a genuine dispute regarding Defendants' affirmative defenses. Absence of lawsuit does not constitute an "affirmative" or "overt" act as necessary for waiver or acquiescence. *See Taylor Holland*, 2016 U.S. Dist. LEXIS 187379, at *17. On the contrary, Adobe's admonishments over the unauthorized sales shows *lack* of intent to acquiesce or abandon its rights. *See id*. at *15. Similarly, estoppel is not appropriate because Defendants were not ignorant of their infringement and did not rely on Adobe's apparent inaction. Indeed, Mr. Clark's email directing sales persons to stop unauthorized sales shows that Defendants knew of the sales and acted in anticipation of Adobe's enforcement of its rights.[19]

Defendants cited authorities do not persuade otherwise. For instance, *Watermark Publishers v. High Tech System*, No. 95-3839-IEG (CGA), 1997 WL 717677 (S.D. Cal. June 18, 1997) illustrates an estoppel case far different from this one. In *Watermark*, a plaintiff sent a cease-and-desist letter to a defendant regarding a map displayed at a visitor center. *Id*. at *2. The defendant, believing that the plaintiff was referring to a *different* map, responded that they had taken down the display. *Id*. Three years later, the plaintiff saw the first map again and sued the defendant. *Id.* The court found that the plaintiff was estopped from asserting its claims because "[defendant] had a right to believe that [plaintiff] intended him to rely on its failure to pursue its claim after he replace[d] the Le Sage Riviera display" and "was ignorant of the fact that [plaintiff] believed that the Lakeport display infringed its copyright." *Id*. at *8. Here, Defendants were *not* ignorant that the unauthorized sales infringed Adobe's copyright and did *not* rely on Adobe's

---

[19] Alternatively, to the extent that Defendants relied on Adobe's inaction with regards to the remaining sales in 2015, they produce no evidence that Adobe knew of those sales.

9

inaction to continue those sales.[20] Defendants thus failed to demonstrate a genuine dispute that waiver, estoppel, or acquiescence precludes summary judgment for direct copyright infringement.

Accordingly, the Court **GRANTS IN PART** Adobe's motion for summary judgment for direct copyright infringement for one sale to SunPumps, Inc. and five sales to J&B Medical Supply Co. as these are not subject to the statute of limitations analysis. Adobe's motion is **DENIED** for all other claims of direct copyright infringement.

### B. Contributory Copyright Infringement

A claim for contributory copyright infringement requires: "(1) direct infringement by a third party, (2) actual or constructive knowledge that third parties were directly infringing; and (3) a material contribution by the defendant to the infringing activities." *In re Napster, Inc. Copyright Litigation*, 377 F. Supp. 2d 796, 801 (N.D. Cal. 2005). The Copyright Act "does not apply extraterritorially." *Kirtsaeng v. John Wiley & Sons, Inc.*, 568 U.S. 519, 562 (2013); *Subafilms, Ltd. v. Mgm-Pathe Comms. Co.*, 24 F.3d 1088, 1095 (9th Cir. 1994). Adobe was thus required to show that the underlying direct infringement for its contributory infringement claim occurred in the United States. *See Subafilms*, 24 F.3d at 1092; *Perfect 10, Inc. v. Yandex N.V.*, 962 F. Supp. 2d 1146 at 1157-58 (N.D. Cal. 2013.)

Here, Adobe produces some evidence that Software Tech resold volume-licensed and EDU software in violation of Adobe's licenses. (*See* SSUF Nos. 31-32). However, it did not show that the alleged direct infringement occurred inside the United States. To the contrary, Adobe concedes that Software Tech was based in Canada and received Adobe software from Mr. Qin at Tiger Direct CA—a Canadian company. (Adobe MSJ at 7:18-9:19.) Thus, at minimum, Adobe failed to show that Software Tech's alleged unauthorized sales took place in the United States and

---

[20] Defendants also cite two other plainly inapposite cases. In *Quinn v. City of Detroit*, 23 F. Supp. 2d 741, 743-45 (E.D. Mich. 1998), the court found an implied license from an attorney who encouraged a city legal department to use his case management software and then attempted to sue. In *Compliance Source, Inc. v. Greenpoint Mortgage. Funding, Inc.*, No. 3:06-CV-1057-L, 2010 WL 5109743, at *4 (N.D. Tex. Dec. 8, 2010), the court denied summary judgment on the issue of waiver, noting that a reasonable jury could find *lack* of waiver because defendants represented noninfringement to the plaintiff. As Adobe did not encourage Defendants' sales to resellers, neither of these cases supports Defendants' argument.

10

summary judgment is not appropriate.[21]

Defendants' cross-motion posits that no reasonable jury could find that Defendants had knowledge of Software Tech's unauthorized sales. The Court finds that a genuine issue of material fact exists. Defendants focus on only two sources: first, Ms. Stilson's testimony that she did not know how Software Tech was using the serial keys it bought from Defendants, (Stilson Depo. at 75:21-22), and second, Mr. Draper's testimony that he had no reason to believe that Mr. Qin knew of Software Tech's sales. (Draper Depo. at 63:23-63:1.)

Adobe produces sufficient evidence disputing Defendants' narrative. As examples: Tiger Direct CA and Mr. Qin were informed that Software Tech was operating a fake school to purchase Adobe EDU software in 2011. (Dkt. No. 89-29 ("Townsend Decl.") ¶¶ 12-17.) Emails show that Mr. Qin then assisted in transferring the fake school account to one for "Canada software outlet" and then continued to sell EDU software. (Dkt. No. 89-26 ("Moushaghayan Decl.") ¶¶ 9-12 & Exs. B, C.)[22] Emails also suggest that Mr. Qin assisted Software Tech in purchasing volume-licensed software using fake customer information.[23] (*Id.* ¶¶ 9-16 & Exs. B, C, E, F.) Further,

---

[21] Adobe also attempts to rely on the default judgment issued against Software Tech in another litigation to show direct infringement. As noted above, orders issued in another case cannot supply facts not in evidence. *See supra* n.5; *see also GMS Accessories, Inc. v. Electric Wonderland, Inc.*, 07 Civ. 3219 (PKC) (DCF), 2012 WL 13059956, at *1 (S.D.N.Y. June 20, 2012) (finding default judgment against a direct infringer inapplicable to alleged contributory infringer who was not a party to the previous case). Adobe cites several cases where courts granted judicial notice of documents from other litigations, but none of those cases arose in the context of summary judgment, where the court is required to consider only admissible evidence. *Harris v. County of Orange*, 682 F.3d 1126, 1130-31 (9th Cir. 2012) and *Holder v. Holder*, 305 F.3d 854, 866-67 (9th Cir. 2002) used judicial notice to determine claim and issue preclusion for the same parties, not liability of a third party.

[22] Defendants object to Mr. Moushaghayan's declaration on the basis that he allegedly committed fraud against Adobe and Software Tech. Defendants do not, however, dispute the authenticity of the emails attached to his declaration. The Court therefore considers the emails, which speak for themselves, as evidence of Mr. Qin's potential awareness of Software Tech's scheme.

[23] Defendants argue that Mr. Qin's knowledge cannot be imputed to Tiger Direct CA, but cite cases that support attributing knowledge in this case. An employee's knowledge is attributable to the employer if the employee acted within the scope of his employment and benefited of the employer. *Kaneka Corp. v. Sinochem Jiangsu Coo., Ltd.*, No. CV-09-7290 GHK (SSx), 2012 WL 13001420, at *4 (C.D. Cal. Apr. 4, 2012); *Michael Kors, L.L.C. v. Hernandez Int'l Inc.*, 2016 WL 6306129, at *22-23 (S.D. Tex. Oct. 27, 2016).

11

Ms. Stilson informed executives at Tiger Direct CA that Software Tech was a reseller not authorized to receive EDU or volume-license software in 2014—the findings for which were forwarded to Mr. Shaffer, the Executive Vice President for all Defendants.[24] Even more circumstantial evidence, not listed here, is proffered. Thus, Defendants' knowledge of Software Tech's conduct raises a genuine dispute of material fact.

Accordingly, the Court **DENIES** Adobe's motion for summary judgment on contributory copyright infringement and **DENIES** Defendants' motion on the knowledge element of the same.

### C. Contributory Trademark Infringement

Contributory trademark infringement occurs when the defendant (1) "'intentionally induce[d]' the primary infringer to infringe," or else (2) "continue[d] to supply an infringing product to an infringer with knowledge that the infringer is mislabeling the particular product supplied." *Perfect 10, Inc. v. Visa Int'l Service Ass'n*, 494 F.3d 788, 807 (9th Cir. 2007) (quoting *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 955 (1982)). The parties make the same arguments for contributory trademark infringement as for contributory copyright infringement, even though the former is "more difficult to satisfy." *Id*. at 806. Adobe moves for summary judgment on the contributory trademark infringement claim, while Defendants move for summary judgment on the knowledge element only.

For the same reasons as stated for contributory copyright infringement, none of the parties have shown entitlement to summary judgment. Adobe makes no effort to establish Software Tech's direct trademark infringement and relies exclusively on the default judgment in the Software Tech litigation. Although trademark law applies extraterritorially more readily than copyright law, Adobe fails to produce evidence that Software Tech mislabeled any particular product to have effects in the United States. *See Trader Joe's Co. v. Hallatt*, 835 F.3d 960, 969 (9th Cir. 2016). To the extent that Software Tech directly infringed Adobe's trademarks,

---

[24] Defendants argue that Ms. Stilson's evidence is inadmissible because she did not have personal knowledge of Software Tech's end users. The Court finds that Ms. Stilson is competent to testify as to the information she provided to the Defendants for the purpose of establishing Defendants' knowledge of Software Tech's conduct. Such evidence will not be excluded at trial.

12

Defendants failed to show that they were ignorant of such infringement. In particular, Defendants failed to show that Mr. Qin lacked knowledge of Software Tech's conduct or that Ms. Stilson's investigation failed to give notice to the Defendants.

Accordingly, the Court **DENIES** Adobe's and the Defendants' motions for summary judgment on contributory trademark infringement.

### D. Defendants' Affirmative Defenses

#### 1. *Statute of Limitations*

Defendants argue that Adobe is time-barred from recovering copyright infringement damages accrued before September 8, 2014. The Copyright Act provides for a three-year statute of limitations after the claim has accrued. 17 U.S.C. § 507(b). Ordinarily, a claim accrues "when the cause of action is complete with all of the elements." *Gallardo v. DiCarlo*, 203 F. Supp. 2d 1160, 1169 n.13 (C.D. Cal. 2002). However, under the "discovery rule" followed by the Ninth Circuit, a copyright claim accrues "when a party discovers, or reasonably should have discovered, the alleged infringement." *Media Rights Techs., Inc. v. Microsoft Corp.*, 922 F.3d 1014, 1022 (9th Cit. 2019). In addition, under the "separate-accrual rule," the statute of limitations runs separately from each instance of copyright infringement. *Id.* at 1023. In case of continuous infringement, an infringer commits a new wrong "[e]ach time an infringing work is reproduced or distributed" and "[e]ach wrong gives rise to a discrete 'claim' that 'accrues at the time the wrong occurs.'" *Id*. (quoting *Petrella*, 572 U.S. at 671).

Defendants argue that Adobe's copyright and trademark claims accrued on August 26, 2013, when Adobe determined that serial keys it had purchased from Software Tech had been activated multiple times, in violation of Adobe's licenses. Further, because Adobe had the capability to determine the distributor or reseller of a particular serial key, Defendants claim Adobe knew that the keys at issue came from Tiger Direct or SYX Services Inc at the time of the investigation. Based thereon, Defendants assert that Adobe knew or should have known that Defendants sold the volume licensed serial keys to Software Tech no later than September 3, 2013.

Adobe disagrees and counters: Mr. Draper testified that Adobe's database only allowed

13

Adobe to determine that the serial keys had been assigned to the Defendants and deployed to what appeared to be legitimate users at the time of the investigation.[25] It was not until 2015, when Adobe learned that Software Tech used fake customer information to purchase serial keys, that Adobe knew that Defendants sold the keys directly to Software Tech. And it was not until 2017, when Mr. Moushaghayan became a cooperating witness, that Adobe discovered that the Defendants knowingly sold the serial keys to Software Tech. Prior to that time, Adobe did not know if the keys have been stolen, leaked, or purchased from the customers or the Defendants.

The Court finds that summary judgment is inappropriate. Whether Adobe should have reasonably known or investigated the Defendants' unauthorized sales based on the serial keys is a question of fact for the jury. *Morton's Market, Inc. v. Gustafson's Diary, Inc.*, 198 F.3d 823, 832 (11th Cir. 1999); *Yamuchi v. Cotterman*, 84 F. Supp. 3d 993, 1011 (N.D. Cal. 2015). A reasonable jury could find that Adobe had acted reasonably in not investigating Defendants' involvement in Software Tech's scheme. *Cf. Grisham v. Philip Morris, Inc.*, 670 F. Supp. 2d 1014, 1021 (C.D. Cal. 2009) ("[S]ummary judgment is rarely proper where the statute of limitations runs from when plaintiff discovered or should have discovered the element of the cause of action." (citation omitted)). Moreover, even if Adobe should have known about Defendants' infringement with respect to the Software Tech's volume licensed software sales, the statute of limitations runs separately for Defendants other infringing conduct—including sales to non-Software Tech resellers and improper sales of EDU software. *See Petrella*, 572 U.S. at 683.

Defendants cite *Oracle America, Inc. v. Hewlett Packard Enterprise Co.*, No. 16-cv-01393-JST, 2019 U.S. Dist. LEXIS 21977, at *17-18 (N.D. Cal. Feb. 6, 2019) for the proposition that Adobe should be charged with constructive knowledge upon mere suspicion of direct infringement. *Oracle* suggests that a copyright owner has a duty to investigate and is chargeable with knowledge of facts it could have uncovered upon a reasonable investigation. *See id.* (citing *Wood v. Santa Barbara Chamber of Commerce, Inc.*, 705 F.2d 1515, 1521 (9th Cir. 1983). *Wood*

---

[25] Defendants claim that Adobe knew immediately that Defendants were selling the key to Software Tech. However, the records showed that Defendants sold the keys to seemingly legitimate customers and provided no information about how Software Tech obtained the keys. (Draper Depo. at 43:8-13.)

14

and *Oracle*, however, do not change the basic test for constructive knowledge. A plaintiff has constructive knowledge when they "should have discovered" the facts at issue—including by conducting a "reasonably required" investigation where "a reasonable litigant should have investigated." *Wood* at 1521. Whether Adobe acted reasonably in not investigating Defendants is part of the inquiry of whether Adobe should have discovered the infringement—which remains a disputed question for the jury.

Defendants also cite *Oracle* to argue that a claim for contributory infringement accrues at the time of direct infringement—August 2013 in this case. 2019 U.S. Dist. LEXIS 21977, at *18. None of the cases cited in *Oracle* suggest that liability for contributory infringement accrues before a plaintiff discovers defendants' involvement in the underlying direct infringement. *See Goldberg v. Cameron*, No. C-05-03534 RMW, 2009 U.S. Dist. LEXIS 59633, at **15-18 (N.D. Cal. July 10, 2009) (holding that the statute of limitation runs from later acts of direct infringement, rather than earlier acts of material support, without considering the discovery rule); *ExperExchange, Inc. v. Doculex Inc.*, No. C-08-03875 JCS, 2009 U.S. Dist. LEXIS 112411, at **19-21 (N.D. Cal. Nov. 16, 2009) (analyzing 21 different claims without distinguishing contributory and direct infringement). The discovery rule holds that a claim accrues when a plaintiff discovers or should discover the cause of action, not a single element of the cause of action. Hence, Adobe's contributory infringement claim accrued when it discovered or should have discovered all elements of Defendants' contributory infringement, including both Software Tech's direct infringement *and* Defendants' involvement in that infringement.

Accordingly, the Court **DENIES** Defendants' motion for summary judgment on the statute of limitations defense, and as a material dispute of fact remains as to the timeliness of claims before September 8, 2014, Adobe's motion for summary judgment as to those sales similarly fails and is **DENIED.**

        2. *Latches*

Defendants argue that Adobe's contributory and direct trademark claims are barred by latches. A latches defense requires (1) unreasonable delay by plaintiff in bringing suit, and (2) prejudice. *Fitbug Ltd. v. Fitbit, Inc.*, 78 F. Supp. 3d 1180, 1186 (N.D. Cal. 2015). To assess the

15

reasonableness, the court first measures the delay following the time defendants knew or should have known about their cause of action. *Id.* The court then compares the delay to the limitations period of the most analogous state statute. *Id.* at 1189. The most analogous state limitations period for trademark infringement is four years. *Pinkette Clothing, Inc. v. Cosmetics Warriors Ltd.*, 894 F.3d 1015, 1025 (9th Cir. 2018) (citation omitted). If plaintiff's delay falls within the comparable statute of limitations, latches presumptively does not apply. *Id.* If the delay exceeds the statute of limitations, the court analyses the factors recited in *E-Systems, Inc. v. Monitek, Inc.*, 720 F.2d 604, 607 (9th Cir. 1983) to assess prejudice. *La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*, 762 F.3d 867, 878 (9th Cir. 2014).

Defendants' latches defense fails for the same reasons as its statute of limitations defense. Under the facts presented by Adobe, "there is a strong presumption against the latches defense." *La Quinta*, 762 F.3d at 878.

Accordingly, the Court **DENIES** Defendants' motion for summary judgment on the latches defense.

### 3. *Collateral Estoppel*

Defendants argue that Adobe is collaterally estopped from recovering more than $2,300,000 awarded in the Software Tech litigation for contributory copyright and trademark infringement, as the current claims are based on the same facts. Collateral estoppel prevents relitigation of an issue that was "actually litigated" and "necessary to the outcome" of another action. *Collins v. D.R. Horton, Inc.*, 505 F.3d 874, 880-81 (9th Cir. 2007) (quoting *Parklane Hosiery Co., Inc.*, 439 U.S. 322, 326 n.5 (1979)). Adobe argues that Defendants waived their collateral estoppel defense by not pleading it in their answer. *See Haberson v. Parke Davis, Inc.*, 746 F.2d 517, 520-21 (9th Cir. 1984).

Defendants did not waive their collateral estoppel defense because Adobe articulated no prejudice. *See Camarillo v. McCarthy*, 998 F.2d 638, 639 (9th Cir. 1993) ("In the absence of a showing of prejudice . . . an affirmative defense may be raised for the first time at summary judgment.") (citing *Rivera v. Anaya*, 726 F.2d 564, 566 (9th Cir. 1984)). However, disputes of material fact preclude summary judgment on that defense. Adobe convincingly argues that the

issues decided in the Software Tech litigation are not identical to the issue of Software Tech's direct infringement in this case. (*See* Adobe MSJ at 13:23-14-8.) For instance, the Software Tech litigation involved fewer copyright and trademarks than this case; [26] the time period was shorter than the time period here; and the damages award included $1.9 million in sanctions. (*Id.*; RJN Ex. 8 at 12.) Given the differences, the Court cannot apply the collateral estoppel defense.

Accordingly, the Court **DENIES** Defendants' motion for summary judgment on this ground.

### E. Trademark Dilution and Unfair Competition Under the Lanham Act

A claim for trademark dilution requires the plaintiff to show that "(1) the mark is famous and distinctive; (2) the defendant is making use of the mark in commerce; (3) the defendant's use began after the mark became famous; and (4) the defendant's use of the mark is likely to cause dilution by blurring or dilution by tarnishment." *Jada Toys, Inc. v Mattel, Inc.*, 518 F.3d 628, 634 (9th Cir. 2007) (citing 15 U.S.C. § 1125(c)). Dilution is "the lessening of the capacity of a famous mark to identify and distinguish goods or services, regardless of the presence or absence of (1) competition of the famous mark and other parties, or (2) likelihood of confusion, mistake or deception." *Panavision Int'l L.P. v. Toeppen*, 141 F.3d 1316, 1326 (9th Cir. 1998). Dilution by tarnishment—the claim asserted by Adobe— "occurs when a famous mark is improperly associated with an inferior or offensive product or service." *Id*.

Defendants contend that the dilution claim fails because they sell Adobe's own products under Adobe's trademarks and no customers were confused they were purchasing non-EDU software. Adobe responds that by selling Adobe EDU software to regular customers, Defendants tarnished Adobe's reputation by associating its regular products with the "inferior" EDU versions. Mr. Draper attests that EDU software has "less functionality" than the full version, which includes "personalized tutorials and instructions." (Suppl. Draper Decl. ¶ 4.)

The Court agrees with Adobe that a reasonable jury could find that Adobe's sale of EDU software to regular customers constitutes dilution. Although neither party cites cases where a plaintiff's trademark was used with the plaintiff's own products, no principled reason prevents

---

[26] Adobe states that the Software Tech litigation involved 19 copyrights, compared to 56 copyrights here. The Software Tech order discusses 21 copyrights. (RJN Ex. 8 at 6.)

17

tarnishment through association with an inferior product belonging to the plaintiff. In *Adobe Systems v. Tanvir*, No. 16-cv-6844 CRB, 2017 U.S. Dist. LEXIS 108934, at \*12-13 (N.D. Cal. 2017), Judge Breyer found that Adobe stated a claim for tarnishment through association with software that did "not allow for any updates or security patches" and came with "bugs, viruses, and/or lack of customer service." Adobe argues for similar deficiencies in EDU software in this case. Consumer confusion is not required to state a claim for dilution. *See Panavision*, 141 F.3d at 1326. Additionally, consumer confusion may be found in the use of a mark beyond permitted scope in a licensing agreement. *See Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*, 604 F.2d 200, 205 (2d Cir. 1979).

Accordingly, the Court **DENIES** Defendants' motion for summary judgment on the trademark dilution and unfair competition claims.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Adobe's motion for partial summary judgment with respect to Tiger Direct's sales to SunPumps, Inc. and J&B Medical Supply Co. only. The Court **DENIES** the parties' motions on all remaining grounds.

This Order terminates Docket Numbers 86, 88, 89, and 95.

**IT IS SO ORDERED.**

Dated: October 29, 2019

**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**